# GROVER AND BAKER SEWING MACHINE COMPANY *v.* RADCLIFFE.

ERROR TO THE COURT OF APPEALS OF THE STATE OF MARYLAND.

No. 72.   Argued November 13, 14, 1890. — Decided December 8, 1890.

Domicil generally determines the particular territorial jurisprudence to which the individual is subjected.

Although a judgment in one State against a citizen of another State, may be held valid under local laws by the courts of the former, the courts of the latter are not bound to sustain it, if it would be invalid but for the special laws of the State where rendered.

B., a citizen of Maryland, having executed a bond, containing a warrant authorizing any attorney of any court of record in the State of New York or any other State, to confess judgment for the penalty, and judgment having been entered against him in Pennsylvania by a prothonotary

without service of process, or appearance in person or by attorney, under a local law permitting that to be done, *Held;*

(1) That in a suit upon this judgment in Maryland, the courts of Maryland were not bound to hold the judgment as obligatory either on the ground of comity or of duty, contrary to the laws and policy of their own State.

(2) B. could not properly be presumptively held to knowledge and acceptance of particular laws of Pennsylvania or of all the States other than his own, allowing that to be done which was not authorized by the terms of the instrument he had executed.

THIS was an action brought in the Circuit Court of Cecil County, Maryland, by the Grover and Baker Sewing Machine Company against James Benge and John Benge, who were then citizens of Delaware, by summons and attachment on warrant, which was served on William P. Radcliffe as garnishee. Radcliffe filed pleas on behalf of the Benges according to the Maryland practice, putting the validity of the judgment in issue.

The declaration was in these words:

"This suit is instituted to recover the sum of twenty-three hundred dollars from the defendants, due and owing from the defendants to the plaintiff on and by virtue of a certain judgment which the plaintiff, on the third day of January, in the year eighteen hundred and seventy-four, in the Court of Common Pleas in and for the county of Chester, in the State of Pennsylvania, one of the United States of America, by the judgment of the said court, recovered against the defendants, for the sum of three thousand dollars; which said judgment is still in force and unsatisfied."

Upon the trial, a record from the Court of Common Pleas in and for the county of Chester, in the State of Pennsylvania, was read in evidence as follows:

"I do hereby enter judgment against the defendants and in favor of the plaintiff in this cause for the sum of three thousand dollars, lawful money, debt, besides costs, etc., on a bond and warrant of attorney to confess judgment, dated March sixteenth, A.D. one thousand eight hundred and seventy-two, conditioned that if the above-named James Benge, his heirs,

executors, or administrators, shall well and truly pay or cause
to be paid to the said Grover & Baker Sewing Machine Com-
pany the full amount of each and every liability incurred or
to be incurred by him, the said James Benge, to or with the
said Grover & Baker Sewing Machine Company, for and on
account of all sewing-machines and all sewing-machine find-
ings, silks, and threads or other articles, including promissory
notes and other property that may from time to time hereafter
be sold, consigned, supplied, or otherwise entrusted to him, the
said James Benge, by the said Grover & Baker Sewing
Machine Company, upon his orders or by his acceptance, with
or without notice to the said John Benge, at the time or times
when each and every liability shall become due and payable or
at such time and times for which payment of the same may
hereafter, with or without notice to the said John Benge, be
extended, then this obligation to be void.   This obligation is
intended to operate as a continuing security for the payment,
when the same shall become due and be demanded, of all and
every liability incurred to and with the said Grover & Baker
Sewing Machine Company by the said James Benge aforesaid,
to the amount not exceeding the limit of this bond.

"January 3d, 1874. — Judgment, $3000.00.

"JOHN A. RUPERT, *Prot.*"

The bond referred to was executed March 16, 1872, by James
Benge, then a citizen of Pennsylvania, and John Benge, then
a citizen of Maryland, and was as follows:

"Know all men by these presents that James Benge, of
West Chester, Pa.; John Benge, of Kimbleville, Cecil County,
Md., are hereby held and firmly bound unto the Grover &
Baker Sewing Machine Company, a corporation duly estab-
lished by law in the city of Boston, State of Massachusetts,
also doing business at Philadelphia, State of Pennsylvania,
in the sum of three thousand dollars, lawful money of the
United States of America, to be paid to the said Grover &
Baker Sewing Machine Company, its legal representatives or
assigns; for which payment, well and truly to be made, we

bind ourselves, heirs, executors, and administrators, jointly and severally, firmly by these presents. Sealed with our seals. Dated the 16th day of March, one thousand eight hundred and seventy-two; and we hereby authorize any attorney of any court of record in the State of New York or any other State to confess judgment against us for the said sum, with release of errors, etc.

"Whereas the above-named James Benge, at the special instance and request of the above-bound John Benge, has obtained a credit with the said Grover &, Baker Sewing Machine Company for machines of their manufacture, and for sewing-machine findings, silks, and threads manufactured and dealt in by said Grover & Baker Sewing Machine Company and for other articles, including promissory notes and other property to be hereafter supplied to him, the said James Benge:

"Now, the condition of this obligation is such that if the above-bound James Benge, his heirs, executors, or administrators, shall well and truly pay or cause to be paid to the said Grover & Baker Sewing Machine Company the full amount of each and every liability incurred by him, the said James Benge, to or with the said Grover & Baker Sewing Machine Company for and on account of all sewing-machines 'and all sewing-machine findings, silks, and threads or other articles, including promissory notes and other property that may from time to time hereafter be sold, consigned, supplied, or otherwise entrusted to him, the said James Benge, by the said Grover & Baker Sewing Machine Company, upon his orders or by his acceptance, with or without notice to the said John Benge, at the time or times when each and every liability shall become due and payable, or at such time and times for which payment of the same may hereafter, with or without notice to the said John Benge, be extended, then this obligation to be void.

"This obligation is intended to operate as a continuing security for the payment, when the same shall become due and be demanded, of all and every liability incurred to and with the said Grover & Baker Sewing Machine Company by

the said James Benge, as aforesaid, to the amount not exceeding the limit of this bond, three thousand dollars.

"JAMES BENGE.   [SEAL.]

"JOHN BENGE.   [SEAL.]"

Plaintiff read in evidence a statute of the State of Pennsylvania, enacted February 24, 1806, as follows:

"It shall be the duty of the prothonotary of any court of record, within this Commonwealth, on the application of any person being the original holder (or assignee of such holder) of a note, bond, or other instrument of writing, in which judgment is confessed, or containing a warrant for an attorney-at-law, or other person to confess judgment, to enter judgment against the person or persons who executed the same, for the amount which, from the face of the instrument, may appear to be due, without the agency of an attorney, or declaration filed, with such stay of execution as may be therein mentioned, for the fee of one dollar, to be paid by the defendant; particularly entering on his docket the date and tenor of the instrument of writing on which the judgment may be founded, which shall have the same force and effect, as if a declaration had been filed, and judgment confessed by an attorney, or judgment obtained in open court and in term time; and the defendant shall not be compelled to pay any costs, or fee to the plaintiff's attorney, when judgment is entered on any instrument of writing as aforesaid." Purdon's Digest, Judgment, 30.

It was stipulated that "the common law of Pennsylvania, the practice of her courts, and the construction placed by her courts upon any statutes in force in that State may be proved by the decisions of the Pennsylvania courts, as reported in the printed volumes of Pennsylvania Reports." The other evidence adduced tended to establish or disprove that the property in controversy in the attachment and garnishment belonged to John Benge.

The court instructed the jury "that the statute law of the State of Pennsylvania, offered in evidence by the plaintiff and admitted by the defendant to be the law under which the

judgment offered in evidence by the plaintiff was entered, did not authorize the prothonotary of the Court of Common Pleas in and for the county of Chester, in the State of Pennsylvania, to enter the said judgment, and their verdict should be for the defendant."

The verdict was accordingly returned for the defendant and judgment entered thereon, and an appeal prosecuted therefrom to the Court of Appeals of the State of Maryland, by which the judgment was affirmed, and a writ of error was thereupon allowed to this court. The opinion of the Court of Appeals will be found reported in 66 Maryland, 511.

*Mr. Albert Constable* (with whom was *Mr. William T. Warburton* on the brief) for plaintiff in error.

The Court of Appeals of Maryland erred in affirming the instruction given by the Circuit Court for Cecil County to the jury, " that the statute law of the State of Pennsylvania offered in evidence by the plaintiff, and admitted by the defendant to be the law under which the judgment offered in evidence by the plaintiff was entered, did not authorize the prothonotary of the Court of Common Pleas, in and for the county of Chester, in the State of Pennsylvania, to enter the said judgment." If this judgment is a nullity as to John Benge, then every judgment in Pennsylvania, entered by a prothonotary under the statute of 1806, is a nullity, and every title, acquired by a sale under such a judgment, is invalid. As the statute has been practiced under since 1806, many titles necessarily depend upon its validity.

Looking at the substance of things, not names, a judgment when confessed by an attorney on a warrant which specified, on its face, the amount, terms, etc., of the proposed judgment, was never really confessed by the attorney, but by the defendant himself. The warrant on its face, in such cases, which are the only cases dealt with by the statute, is a full consent by the defendant to the judgment therein and thereby authorized. It is not a principle of law, but a rule of practice merely which requires in such cases, that is, cases where the warrant of

attorney, upon its face, has specified the amount, terms, etc., of the confessed judgment, that between the defendant whŏ gives the warrant, and the prothonotary who makes the actual entry of judgment, there shall be interposed the agency of an attorney; and it is only this rule of practice in entering the formal judgment that the statute of 1806 deals with.   This is mere procedure.   *Helvete* v. *Rapp*, 7 S. & R. 306.

Such a judgment is the act of the court; *Braddee* v. *Brown-field*, 4 Watts, 474.   It is a judicial act; *Hageman* v. *Salisbery*, 74 Penn. St. 280, 284; and being a judicial act it must be tested by the application of the same principles which guide us in testing the jurisdiction of any other judicial officer or court.   One of those principles is that the court having acquired jurisdiction over a party may proceed to enter judgment against him; and that that jurisdiction may be acquired (1) by due service of process upon him within the jurisdiction; (2) by his voluntary appearance without process; or, (3) by his waiver of process.   The latter is what Benge did, thereby yielding his right to notice of the time and place of hearing, and the opportunity to be heard.   In *Rabe* v. *Heslip*, 4 Penn. St. 139, the Supreme Court of Pennsylvania said: "The Act of Assembly merely substitutes the prothonotary, though not named or described, for an attorney of the court; but it supplies no deficiency of the power given in the first instance."

But there is another ground upon which this judgment against John Benge can stand, and which, we submit, is equally conclusive.

At the time John Benge gave the warrant to "any attorney of any court of record of the State of New York, or any other State," to confess a judgment against him for $3000, this Statute of 1806 was an existing statute of the State of Pennsylvania, any one of whose courts of record were thus authorized by Benge to enter the judgment against him.   This statute, therefore, formed part of the warrant, and must be read into it.   In giving the warrant, this statute of 1806 being at the time an existing statute of the State regulating the manner in which the courts should enter the judgment on instruments of that description, he virtually thereby consented that judgment

might be entered according to the practice of the courts of that State as regulated by this statute. It would be a monstrous claim, that having given a warrant to confess a judgment in the courts of Pennsylvania, he was now entitled to argue that a judgment entered in one of those courts in accordance with the law and practice of the State, was void and a nullity, though that law was an existing law of the forum at the time he gave the warrant. *Johnson* v. *Chicago &c. Elevator Co.*, 119 U. S. 388, 400; *Hopkins* v. *Orr*, 124 U. S. 510.

*Mr. John A. J. Creswell* for defendant in error.

MR. CHIEF JUSTICE FULLER, after stating the case as above reported, delivered the opinion of the court.

The Maryland Circuit Court arrived at its conclusion upon the ground that the statute of Pennsylvania relied on did not authorize the prothonotary of the Court of Common Pleas of that State to enter the judgment; and the Court of Appeals of Maryland reached the same result upon the ground that the judgment was void as against John Benge, because the court rendering it had acquired no jurisdiction over his person.

It is settled that notwithstanding the provision of the Constitution of the United States, which declares that "full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State," Art. IV, section 1, and the acts of Congress passed in pursuance thereof, 1 Stat. 22, Rev. Stat. § 905 — and notwithstanding the averments in the record of the judgment itself, the jurisdiction of the court by which a judgment is rendered in any State may be questioned in a collateral proceeding; that the jurisdiction of a foreign court over the person or the subject-matter, embraced in the judgment or decree of such court, is always open to inquiry; that, in this respect, a court of another State is to be regarded as a foreign court; and that a personal judgment is without validity if rendered by a State court in an action upon a money demand against a non-resident of the

State, upon whom no personal service of process within the State was made, and who did not appear. *D'Arcy* v. *Ketchum*, 11 How. 165; *Thompson* v. *Whitman*, 18 Wall. 457; *Hall* v. *Lanning*, 91 U. S. 160; *Pennoyer* v. *Neff*, 95 U. S. 714.

The rule is not otherwise in the State of Pennsylvania, where the judgment in question was rendered; *Guthrie* v. *Lowry*, 84 Penn. St. 533; *Scott* v. *Noble*, 72 Penn. St. 115; *Noble* v. *Thompson Oil Co.*, 79 Penn. St. 354; *Steel* v. *Smith*, 7 W. & S. 447; nor in the State of Maryland, where the action under review was brought upon it; *Bank of the United States* v. *Merchants' Bank*, 7 Gill, 415; *Clark* v. *Bryan*, 16 Maryland, 171; *Weaver* v. *Boggs*, 38 Maryland, 255. And the distinction between the validity of a judgment rendered in one State, under its local laws upon the subject, and its validity in another State, is recognized by the highest tribunals of each of these States.

Thus in *Steel* v. *Smith*, 7 W. & S. 447, it was decided, in 1844, that a judgment of a court of another State does not bind the person of the defendant, in another jurisdiction, though it might do so under the laws of the State in which the action was brought, and that the act of Congress does not preclude inquiry into the jurisdiction, or the right of the State to confer it. The action was brought on a judgment rendered in Louisiana, and Mr. Chief Justice Gibson, in delivering the opinion of the court, said: "The record shows that there was service on one of the joint owners, which, in the estimation of the law of the court, is service on all; for it is affirmed in *Hill* v. *Bowman*, already quoted, [14 La. 445,] that the State of Louisiana holds all persons amenable to the process of her courts, whether citizens or aliens, and whether present or absent. It was ruled in *George* v. *Fitzgerald*, 12 La. 604, that a defendant, though he reside in another State, having neither domicil, interest nor agent in Louisiana, and having never been within its territorial limits, may yet be sued in its courts by the instrumentality of a curator appointed by the court to represent and defend him. All this is clear enough, as well as that there was in this instance a general appearance by attorney, and a judgment

against all the defendants, which would have full faith and credit given to it in the courts of the State. But that a judgment is always regular when there has been an appearance by attorney, with or without warrant, and that it cannot be impeached collaterally for anything but fraud or collusion, is a municipal principle, and not an international one having place in a question of State jurisdiction or sovereignty. Now, though the courts of Louisiana would enforce this judgment against the persons of the defendants, if found within reach of their process, yet, where there is an attempt to enforce it by the process of another State, it behooves the court whose assistance is invoked to look narrowly into the constitutional injunction, and give the statute to carry it out a reasonable interpretation." pp. 449, 450.

Referring to § 1307 of Mr. Justice Story's Commentaries on the Constitution, and the cases cited, to which he added *Benton* v. *Burgot,* 10 S. & R. 240, the learned Judge inquired: "What, then, is the right of a State to exercise authority over the persons of those who belong to another jurisdiction, and who have perhaps not been out of the boundaries of it?" (p. 450) and quoted from Vattel, Burge, and from Mr. Justice Story, (Conflict of Laws, c. 14, § 539,) that "'no sovereignty can extend its process beyond its own territorial limits, to subject other persons or property to its judicial decisions. Every exertion of authority beyond these limits is a mere nullity, and incapable of binding such persons or property in other tribunals;'" and thus continued: "Such is the familiar, reasonable and just principle of the law of nations; and it is scarce supposable that the framers of the Constitution designed to abrogate it between States which were to remain as independent of each other, for all but national purposes, as they were before the revolution. Certainly it was not intended to legitimate an assumption of extra-territorial jurisdiction which would confound all distinctive principles of separate sovereignty; and there evidently was such an assumption in the proceedings under consideration. . . . But I would perhaps do the jurisprudence of Louisiana injustice, did I treat its cognizance of the defendants as an act of usurpation. It makes

no claim to extra-territorial authority, but merely concludes the party in its own courts, and leaves the rest to the Constitution as carried out by the act of Congress. When, however, a creditor asks us to give such a judgment what is in truth an extra-territorial effect, he asks us to do what we will not, till we are compelled by a mandate of the court in the last resort." p. 451.

In *Weaver* v. *Boggs*, 38 Maryland, 255, it was held that suit could not be maintained in the courts of Maryland upon a judgment of a court of Pennsylvania rendered upon returns of *nihil* to two successive writs of *scire facias* issued to revive a Pennsylvania judgment of more than twenty years' standing, where the defendant had for more than twenty years next before the issuing of the writs resided in Maryland and out of the jurisdiction of the court that rendered the judgment. The court said : " It is well settled that a judgment obtained in a court of one State cannot be enforced in the courts and against a citizen of another, *unless* the court rendering the judgment has acquired jurisdiction over the defendant by actual service of process upon him, or by his voluntary appearance to the suit and submission to that jurisdiction. Such a judgment may be perfectly valid in the jurisdiction where rendered and enforced there even against the property, effects and credits, of a non-resident defendant there situated; but it cannot be enforced or made the foundation of an action in another State. A law which substitutes constructive for actual notice is binding upon persons domiciled within the State where such law prevails, and as respects the property of others there situated, but can bind neither person nor property beyond its limits. This rule is based upon international law, and upon that natural protection which every country owes to its own citizens. It concedes the jurisdiction of the court to the extent of the State where the judgment is rendered, but upon the principle that it would be unjust to its own citizens to give effect to the judgments of a foreign tribunal against them when they had no opportunity of being heard, its validity is denied."

Publicists concur that domicil generally determines the par-

ticular territorial jurisprudence to which every individual is subjected. As correctly said by Mr. Wharton, the nationality of our citizens is that of the United States, and by the laws of the United States they are bound in all matters in which the United States are sovereign; but in other matters, their domicil is in the particular State, and that determines the applicatory territorial jurisprudence. A foreign judgment is impeachable for want of personal service within the jurisdiction of the defendant, this being internationally essential to jurisdiction in all cases in which the defendant is not a subject of the State entering judgment; and it is competent for a defendant in an action on a judgment of a sister State, as in an action on a foreign judgment, to set up as a defence, want of jurisdiction, in that he was not an inhabitant of the State rendering the judgment and had not been served with process, and did not enter his appearance. Whart. Conflict Laws, §§ 32, 654, 660; Story, Conflict Laws, §§ 539, 540, 586.

John Benge was a citizen of Maryland when he executed this obligation. The subject-matter of the suit against him in Pennsylvania was merely the determination of his personal liability, and it was necessary to the validity of the judgment, at least elsewhere, that it should appear from the record that he had been brought within the jurisdiction of the Pennsylvania court by service of process, or his voluntary appearance, or that he had in some manner authorized the proceeding. By the bond in question he authorized "any attorney of any court of record in the State of New York, or any other State, to confess judgment against him (us) for the said sum, with release of errors, etc." But the record did not show, nor is it contended, that he was served with process, or voluntarily appeared, or that judgment was confessed by an attorney of any court of record of Pennsylvania. Upon its face, then, the judgment was invalid, and to be treated as such when offered in evidence in the Maryland court.

It is said, however, that the judgment was entered against Benge by a prothonotary, and that the prothonotary had power to do this under the statute of Pennsylvania of February 24, 1806. Laws of Penn. 1805-6, p. 347. This statute

was proved as a fact upon the trial in Maryland, and may be assumed to have authorized the action taken, though under *Connay* v. *Halstead*, 73 Penn. St. 354, that may, perhaps, be doubtful. And it is argued that the statute, being in force at the time this instrument was executed, should be read into it and considered as forming a part of it, and therefore that John Benge had consented that judgment might be thus entered up against him without service of process, or appearance in person, or by attorney.

But we do not think that a citizen of another State than Pennsylvania can be thus presumptively held to knowledge and acceptance of particular statutes of the latter State. What Benge authorized was a confession of judgment by any attorney of any court of record in the State of New York — any other State, and he had a right to insist upon the letter of the authority conferred. By its terms he did not consent to be bound by the local laws of every State in the Union relating to the rendition of judgment against their own citizens without service or appearance, but on the contrary made such appearance a condition of judgment. And even if judgment could have been entered against him, not being served and not appearing, in each of the States of the Union, in accordance with the laws therein existing upon the subject, he could not be held liable upon such judgment in any other State than that in which it was so rendered, contrary to the laws and policy of such State.

The courts of Maryland were not bound to hold this judgment as obligatory either on the ground of comity or of duty, thereby permitting the law of another State to override their own.

No color to any other view is given by our decisions in *Johnson* v. *Chicago & Pacific Elevator Co.*, 119 U. S. 388, 400, and *Hopkins* v. *Orr*, 124 U. S. 510, cited for plaintiff in error. Those cases involved the rendition of judgments against sureties on restitution and appeal bonds if judgment went against their principals, and the sureties signed with reference to the particular statute under which each bond was given; nor did, nor could, any such question arise therein as that presented in the case at bar.          *Judgment affirmed.*