# YOUNG v. AMY.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 242. Submitted April 27, 1898. — Decided May 31, 1898.

On error or appeal to the Supreme Court of a Territory, this court is without power to reëxamine the facts, and is confined to determining whether the court below erred in the conclusions of law deduced by it from the facts by it found, and to reviewing errors committed as to the admission or rejection of testimony when the action of the court in this respect has been duly excepted to, and the right to attack the same preserved on the record.

There is no error in the conclusions of law in this case: all the assignments of error, and the argument based thereon, rest on the assumption that the findings of fact certified by the court below are not conclusive, and that this court has the power, in order to pass upon the questions raised, to examine the weight of the evidence, and to disregard the facts as found.

THE case is stated in the opinion.

*Mr. Le Grand Young* for appellants.

*Mr. C. S. Varian, Mr. W. H. Dickson* and *Mr. S. P. Armstrong* for appellee.

MR. JUSTICE WHITE delivered the opinion of the court.

By section 17 of the act of Congress of July 16, 1894, c. 138, providing for the admission of Utah into the Union, 28

Stat. 107, c. 138, power was conferred upon the convention, called for the purpose of framing a constitution for the contemplated State, to provide for a transfer of causes which might be pending in the territorial courts, at the time of the admission of Utah into the Union, to the courts of the State which were to be established. The statute moreover provided that "from all judgments and decrees of the Supreme Court of the Territory mentioned in this act, in any case arising within the limits of the proposed State prior to admission, the parties to such judgment shall have the same right to prosecute appeals and writs of error to the Supreme Court of the United States as they shall have had by law prior to the admission of said State into the Union."

This cause comes here for review in virtue of the foregoing provisions of law. It originated in the probate court of Summit County, Utah Territory, and involved a dispute over the distribution of the estate of Oscar A. Amy, who died intestate in the county of Summit, in Utah Territory, on the 26th day of May, 1891. There were three classes of claimants to the estate. First, Adelia Young, Cedina C. Young and Delecto Maston, who were maternal aunts of the decedent, they being the appellants on this record. Second, Royal D. Amy, Francis R. Jackson and others, half blood brothers and sisters of the deceased. Third, Jennie Amy, who is the appellee, claiming to be the wife of the deceased. Each of these different classes of claimants asserted that they were solely entitled to take distribution of the estate to the entire exclusion of the others. In the probate court a decree was rendered in favor of the first-mentioned persons, the maternal aunts. From this decree an appeal was taken to the District Court of the third judicial district of the Territory of Utah, where after a trial *de novo* the decree of the probate court was affirmed. From this decree further appeal was prosecuted to the Supreme Court of the Territory, and that court reversed the decree of the District Court, rejected the claims of those firstly and secondly mentioned; that is, the maternal aunts and the brothers and sisters of the half blood, the court deciding that the wife of the deceased, Jennie Amy, was solely entitled to the entire

estate.  The decree of the Supreme Court of the Territory was
entered on December 21, 1895.  12 Utah, 278.  On the same
day the maternal aunts who were embraced in the first class
applied for and were allowed an appeal to this court, and on
December 21, 1895, a bond for costs was filed in the Supreme
Court of the Territory, and was approved by the Chief Justice
thereof.  The citation on appeal, however, was not issued un-
til about six months thereafter, September 21, 1896.  As in
the meanwhile, the State of Utah had been admitted into
the Union, this citation was approved by the Chief Justice
of the State of Utah, and on the same day findings of fact
and conclusions of law were made by the Supreme Court.
These findings, as the record certifies, were prepared by the
late Chief Justice of the territorial court, and were adopted
by the Supreme Court of the State of Utah as its own.  From
the findings thus made we have ascertained the facts above
stated, and the findings moreover show that the controversy
involved two issues.  First, whether the brothers and sisters
of the half blood were entitled to a distribution of the prop-
erty left by the deceased in preference to the maternal aunts;
and, second, whether Jennie Amy, the appellee, was the wife
of the decedent, it being conceded that if she was his wife
under the laws of Utah, she inherited the property left for
distribution to the exclusion of his maternal aunts.  The first
question, that is, the right to distribution asserted in favor of
the brothers and sisters of the half blood, may be at once dis-
missed from view, as the decree of the Supreme Court rejected
their claim, and they have not appealed.  The second question,
that is, whether Jennie Amy, the appellee, was the wife of
the deceased, depended upon the validity of a judgment of
divorce, against a former husband which had been rendered
in her favor in 1879 in the probate court of Washington
County, Utah, the marriage having been contracted in Utah
and the ground for the divorce being the abandonment of the
wife by the husband.  After this judgment of divorce Mrs.
Amy on the 4th of August, 1886, was married to Oscar A. Amy,
the deceased.  The controversy, then, between the parties
now before us turned upon a claim advanced by the maternal

aunts, that the judgment of divorce rendered between Mrs. Amy and her former hubsand was void ; that she hence did not enter into a lawful marriage with the deceased, and was not entitled, therefore, as his wife to his estate.

The record contains, as we have stated, findings of fact made by the Supreme Court of the State and the conclusions of law, which the Supreme Court held to be decisive of the issues which the case involved, and to which we shall have occasion hereafter to refer. The findings of fact and conclusions of law are immediately followed in the record by this recital : " The foregoing 'is a statement of the facts found upon the evidence in the case, and the following are the rul-. ings of the court on the admission and rejection of the evidence, which were duly excepted to by counsel for Adelia Young, Cedina C. Young and Delecto Maston.". This is followed by a note of evidence, showing what took place during the trial in the District Court, which is also supplemented by the oral and documentary evidence offered in the trial of the cause. It appears that Mrs. Amy offered the decree of divorce between herself and her husband and the complaint filed in the suit in which the judgment of divorce was entered. This was objected to on the ground that the documents were irrelevant, inasmuch as without the summons issued in the cause they proved nothing. The counsel tendering the proof thereupon declared that although the decree on its face recited the fact that the summons had been regularly issued and served, it was absent from the record, and he proposed by further evidence to show that the summons was regularly issued and due notice thereof had been given to the defendant as the law required.

The court received the evidence subject to the objection. That is to say, it declared that it would pass on the objection when all the evidence in the case had been offered, thus treating the objection as in a measure going to the effect. Mrs. Amy and her former husband, the defendant in the divorce proceedings, were then called, and testimony was given by both tending to show that the summons had been issued in conformity to law and the defendant in the divorce

suit was personally cognizant of the suit, as he received and had in his possession the copies of the newspaper containing the published summons, and that due service thereof, in the manner required by law, had been made. All this testimony was objected to, and the court likewise received it subject to objection, no exception being taken to such action. In the course of the testimony of these witnesses various exhibits were offered tending to show the preparation of the summons in compliance with law, the publication in the newspaper of the summons in conformity to legal requirements, its service on the defendant and that he had both legal and actual notice of the suit, all of which was objected to, and this, like the other objections, was reserved to be considered when the evidence was all in. The counsel of Royal D. Amy and others, the sisters and brothers of the half blood, offered in evidence what they designated as the judgment roll of the divorce proceeding. This was also objected to by the counsel for the maternal aunts on the ground that the record was not complete and did not show compliance with the legal requisites, and was objected to by Mrs. Amy because it contained matters asserted not to be properly a part of the judgment roll, and which were therefore not admissible. The court also reserved the objection to this evidence.

At the conclusion of the trial the court sustained all the objections to the evidence and the testimony, and decided the case against Mrs. Amy and in favor of the maternal aunts. To the rulings of the court rejecting the documentary and oral evidence, Mrs. Amy excepted, and upon the record as thus made the case was taken to the Supreme Court of the Territory. In that court, as we have seen, the action of the trial court was reversed and a decree rendered in favor of Mrs. Amy.

The assignments of error are twenty-four in number, and the argument by which their correctness is sought to be maintained has taken a much wider range than the condition of the record justifies. It is settled that on error or appeal to the Supreme Court of a Territory this court is without power to reëxamine the facts and is confined to determining

whether the court below erred in the conclusions of law deduced by it from the facts by it found, and to reviewing errors committed as to the admission or rejection of testimony when the action of the court in this regard has been duly excepted to, and the right to attack the same preserved on the record. *Harrison* v. *Perea*, 168 U. S. 311, and authorities there cited.

The findings of fact and conclusions of law of the Supreme Court are as follows:

· "Eleventh. The court further finds that the said Jennie Amy was married to one Elliot Butterworth in 1875.

"That on the third day of September, 1879, the probate court of Washington County made and entered a decree of divorce, dissolving the bonds of matrimony theretofore existing between the said Jennie Amy and the said Elliot Butterworth, and absolutely releasing the said Jennie Amy and the said Elliot Butterworth from all the obligations of said marriage; that the said probate court so granting said decree of divorce was a court of competent jurisdiction and had jurisdiction of the subject-matter of said divorce action and of both the parties thereto.

"That the said defendant therein, Elliot Butterworth, had knowledge at the time of the said divorce proceedings and was duly served with process in said action.

"That the said Elliot Butterworth married a second wife on the 11th day of October, 1880, being the year after said decree of divorce was rendered ; that his second wife is still living, and she and the said Elliot Butterworth are still husband and wife ; that as the issue of said second marriage the said Elliot Butterworth and his present wife have seven children, ranging from two years to fifteen years old.

"That afterwards, to wit, on April 4, 1886, the said Jennie Amy, the claimant in this proceeding to the estate of the said Oscar A. Amy, deceased, was duly and lawfully married to the said Oscar A. Amy, and continued to be and was his lawful wife at the time of his death."

From these findings it deduced the following legal conclusion :

"That the said Jennie Amy is now the widow of said Oscar A. Amy, deceased, and as such widow she is the successor to the whole of his estate, consisting of the property hereinabove described."

We will consider the assignments in their logical order. The first to the eleventh, inclusive, and the nineteenth complain of errors, which it is alleged the Supreme Court committed in admitting certain evidence. But all the evidence objected to was received by the trial court subject to the objection, and the question of its admissibility turned on that of its irrelevancy or the quantum of proof which it would establish if considered. The ultimate action of the trial court in rejecting the evidence which it had received, subject to objection, amounted, in effect, to a decision that the evidence did not establish that the judgment in the divorce proceedings had been rendered after due publication of summons in accordance with the laws of the Territory, and therefore the evidence was insufficient. But the express finding from all the evidence by the Supreme Court of the State is that the summons in the divorce suit was duly issued and published according to law, and that the defendant had, besides, personal notice of the pendency of the suit. This conclusion being binding on us, establishes that the evidence was relevant and material, and that there was no ground to reject it. We cannot, therefore, say that the evidence should have been disregarded, because it did not establish the facts, which we are bound to conclude it did fully prove. If specific findings of each item of evidence and the conclusions deduced from the separate items had been made, as in *Cheely* v. *Clayton,* 110 U. S. 701, the case would present a different aspect. Considering, however, the state of the record and the nature of the findings of fact certified, we cannot determine the correctness of the objections to the evidence without going into its weight and making independent conclusions of fact; in other words, without disregarding the findings made by the court below, by which we are concluded. The same reasoning is applicable to the other assignments of error. Thus, the thirteenth, fourteenth, seventeenth and eighteenth assert that the court erred in

holding, as to the burden of proof, that it erroneously treated the denial of the validity of the judgment of divorce by the maternal aunts as a collateral attack by them on such judgment. But there are no findings which raise these questions. On the contrary, the facts found render them wholly immaterial, for it is obvious that if the evidence affirmatively established, as the findings declare, that the judgment of divorce was rendered after due summons, and that the defendant had personal notice of the proceedings, the question of burden of proof and collateral attack are wholly irrelevant. Again, the twenty-first and twenty-second assignments of error complain that the court erred in holding that it was not necessary that there should be an order of the court directing the publication of the summons in the divorce proceeding, and that the court erred in holding that the only papers necessary in proof of publication were the complaint, summons and affidavit of the printer and judgment. But there are no findings which raise these questions. On the contrary, the facts found are that the summons was duly published, and that the defendant had besides personal notice. To maintain the assignments of error, we should be obliged to go into the record and ascertain what was the proof on the subject upon which the court based its findings, and deduce from this analysis that the premise upon which the assignments just mentioned are based was a correct one. The same reasoning applies to the twenty-third and twenty-fourth assignments, which charge that the court erred in holding that the probate court by which the divorce judgment was rendered possessed common law or chancery jurisdiction, or that it was ever a court of general jurisdiction. These questions become only material for the purpose of determining the *prima facie* proof resulting from the record of the divorce proceeding. It is not questioned that it was correctly held that the court which rendered the judgment of divorce had jurisdiction of the subject-matter. If, therefore, it had jurisdiction, and the proof affirmatively shows the regularity and validity of the proceedings, it is wholly immaterial to determine whether it possessed common law or chancery powers, or was a court of general jurisdiction.

In effect, all the assignments of error and the argument based thereon rest in reason on the assumption that the findings of fact certified by the court below are not conclusive, and that this court has the power, in order to pass upon the questions raised, to examine the weight of the evidence and disregard the facts as found. If the argument be that the findings of fact are the mere statement of ultimate legal propositions, and therefore they may be disregarded or reviewed, then the result of the contention is that there are no findings of fact and nothing to review, and if the other aspect be looked at, the views which we have just expressed are conclusive.

*Affirmed.*