## DRUMMOND et al. v. LYNCH et al.
### No. 7674.

Circuit Court of Appeals, Fifth Circuit.
March 27, 1936.

R. L. Bullard, of Hattiesburg, Miss., and Geo. W. Barcus, of Waco, Tex., for appellants.

W. M. Sleeper and E. Y. Boynton, both of Waco, Tex., for appellees.

Before HUTCHESON, Circuit Judge, and DAWKINS and STRUM, District Judges.

STRUM, District Judge.

This appeal is from a decree adverse to the plaintiffs below in a suit in equity seeking partition of the estate of C. L. Lynch, deceased, and an accounting. The controversy is between Lynch's first wife and a daughter by that marriage, citizens of Mississippi, as plaintiffs, and his third wife and the children of his second marriage, their heirs at law or personal representatives, all citizens of Texas, as defendants. The property involved is in Texas.

C. L. Lynch married Ella J. Turner, now Ella J. Drummond, one of the plaintiffs herein, in Water Valley, Miss., in 1889, where they lived together until January 3, 1890. On December 23, 1889, their daughter Lucille Bullard, coplaintiff herein, was born. On January 3, 1890, Lynch left Water Valley to find a new business location. After a brief stay in Memphis, Lynch went to St. Louis, Mo., where on February 4, 1892, in a suit instituted by him in the circuit court for the city of St. Louis, a final decree was rendered divorcing him from his then wife, Ella J. Lynch, now Drummond.

While the divorce suit was pending, Lynch purchased some of the property here in question in Hico, Tex. Some time thereafter, the exact time being obscure, he established his domicile there and on December 18, 1894, married Nannie J. Keffer, with whom he lived until her death, November 20, 1909. Children of this marriage were C. L. Lynch, Jr., a defendant herein, Granada Lynch, and Earl Lynch. The latter died during the pendency of this suit, and his interest is represented herein by his administrator. Granada died about 1917, intestate and without issue, leaving surviving her a husband, Woods Anderson, who later remarried, and who died intestate during the pendency of this suit, leaving surviving him his second wife, Grace Anderson, and two sons by his second wife, J. W. Anderson and Berschel Anderson, all of whom have intervened herein as heirs at law of Woods Anderson, claiming the interest in the estate of C. L. Lynch, Sr., to which Woods Anderson would be entitled as an heir at law of Granada Lynch.

On December 17, 1912, Lynch, Sr., married a third wife, Helen Laney, also a defendant herein, and lived with her until Lynch's death, February 12, 1933. There were no children of this union. Substantial portions of Lynch's estate were acquired by him during each of his marriages, and some, as to which he died intestate, during the interim between his first and second marriages.

Plaintiff Lucille Bullard, daughter of Lynch, Sr., by his first marriage, claims a child's interest in his estate under the Texas laws of descent and distribution. Plaintiff Ella J. Drummond, Lynch's first wife, contending that the Missouri divorce decree is void, asserts that she is his lawful widow and, as such, entitled to a community one-half interest in the entire estate left by Lynch, Sr., at his death.

The District Court (1) sustained the divorce decree as against collateral attack; (2) rejected the claim of Ella J. Drummond to share as widow in Lynch's estate, except as to the community property acquired by Lynch during his first marriage and owned by him at the time

of the divorce, and which he still owned at his death, in which limited portion of the estate she was awarded a one-half interest; and (3) held that Lucille Bullard was confined to the provision made for her in her father's will, hereinafter mentioned, except as to certain property as to which Lynch, Sr., died intestate, in which, under the Texas laws of descent and distribution, Lucille as an heir at law of her father, Lynch, Sr., was awarded a child's part, subject to the widow's homestead rights. As an heir at law of her half sister, Granada Lynch, who died intestate, Lucille was also awarded an appropriate interest in Granada's interest in Lynch Senior's estate inherited through her deceased mother. The remaining estate was awarded in appropriate shares to the defendant Helen Lynch, third wife of Lynch, Sr., who survived him; to the children of the second marriage, or those representing them; and to the heirs of Woods Anderson, the latter heirs being awarded Woods Anderson's share as an heir at law of his deceased first wife, Granada Lynch. Plaintiffs appeal. Defendants do not question the decree.

When Lynch, Sr., left Water Valley, January 3, 1890, he left his then wife and child, plaintiffs herein, behind him, stating that he would send for them later. In an effort to join her husband several months later, Mrs. Lynch went to Memphis, where she received a letter from Lynch requesting her to meet him in St. Louis, which she asserts she desired to do but was unable, because she had no money for expenses. Later she went to Louisiana where she remained until March, 1893. Some time in the summer or fall of 1892 she learned that Lynch had secured a divorce from her in St. Louis. She requested the postmaster at Kentwood, La., where she was then living, to investigate and see if it was too late to do anything about defending the suit or getting alimony. The postmaster later advised her that the case was finished and the divorce granted. She then married Mr. Drummond in March, 1893, at Kentwood, La. Drummond is said to have died some twenty years ago. Mrs. Drummond lived with this second husband at McComb, Miss., for about a year. She bore a son by him, who is now about thirty-nine years old. After separating from her second husband, she lived at various places in Louisiana, but returned to reside in Mississippi before this suit was brought.

Lynch's suit for divorce against his first wife was instituted February 16, 1891. The cause was styled "C. L. Lynch, versus Ella J. Lynch." In his petition Lynch alleged, in compliance with the requirements of the Missouri statutes, that "plaintiff (Lynch) is now and has been a resident of the State of Missouri a whole year next before filing petition," which petition was sworn to by Lynch. On February 17, 1891, order of publication and notice to nonresident defendant of suit filed and grounds asserted was issued, citation being returnable to the April term, 1891. Said notice and citation was styled as aforesaid, but not otherwise specifically addressed to the defendant. It stated that the object and general nature of the suit was to obtain a decree of divorce upon the grounds fully stated therein. It was published February 18, 25, and March 4 and 11, 1891, as required by the Missouri statutes. Testimony by deposition was taken on behalf of plaintiff during June, 1891. On July 7, 1891, a purported answer of the defendant Ella Lynch, consisting of a categorical general denial, was filed by one Rowe as attorney for defendant. Mrs. Drummond (Lynch) denies that she ever employed the attorney or gave him authority to file the answer. The attorney testified that he did not recollect any employment by Mrs. Drummond, then Mrs. Lynch, but surmises that he probably filed the answer pursuant to direction of the judge before whom the divorce suit was pending. Plaintiffs here assert that filing of the answer was fraudulently procured by Lynch. The record shows that Lynch moved to strike the answer, but the motion was overruled. On February 14, 1892, the Missouri court entered its final decree, which recites: "Now at this day comes said parties by their respective attorneys, and submit this cause to the Court upon the pleadings and proof, and the Court having heard the evidence herein, being satisfied that the plaintiff is an innocent party and entitled to the relief prayed for in his petition, doth order, adjudge, and decree," etc.

Assailing the divorce decree, plaintiffs here assert that the facts upon which the divorce was granted, particularly those relating to Lynch's residence in Missouri, were false; that the matrimonial domicile remained in Mississippi; and that Mrs.

Drummond (then Lynch) had no notice of the pendency of the suit until after decree.

■ The Missouri court which rendered the decree is a court of record and of general jurisdiction in such matters. Ray v. Ray, 330 Mo. 530, 50 S.W.(2d) 142. As this attack is brought in a United States court sitting in Texas, however, the Missouri decree is foreign, not domestic (34 C.J. 1124), so that it is here open to inquiry, even upon this collateral attack, whether the Missouri court had jurisdiction of the parties and subject-matter. Contrary to the rule when a domestic judgment is under consideration, in which case evidence aliunde to impeach the judgment roll is inadmissible (34 C.J. 537), recitals of the judgment record of a foreign judgment are not conclusive as to jurisdiction, but in that respect may be controverted by extraneous evidence. Thompson v. Whitman, 18 Wall. 457, 21 L.Ed. 897; Simmons v. Saul, 138 U.S. 439, 11 S.Ct. 369, 34 L.Ed. 1054; Grover & B. Sewing Machine Co. v. Radcliffe, 137 U. S. 287, 11 S.Ct. 92, 34 L.Ed. 670; Cole v. Cunningham, 133 U.S. 107, 10 S.Ct. 269, 33 L.Ed. 538; 34 C.J. 1144, 1159; 19 C.J. 175, 375. The inquiry, however, must be confined to jurisdictional infirmities which would render the decree void. It cannot be here reviewed, nor impeached, for mere irregularities. Thompson v. Tolmie, 2 Pet. 157, 7 L.Ed. 381. If the Missouri court had jurisdiction of the parties and subject-matter, its decree is entitled to full faith and credit (U.S.Const. art. 4, § 1), and to the same force it would have in Missouri. Jurisdiction appearing, it is presumed that it was rightfully exercised, particularly after a lapse of 40 years. 19 C.J. 176; 34 C.J. 541.

■ There is no presumption, however, that a court rendering a foreign decree had jurisdiction when the defendant therein was a nonresident of the state where the decree was rendered, or was absent therefrom. In these circumstances, jurisdiction must be made to appear by the judgment roll or otherwise, the burden being on the party relying upon the foreign decree. Galpin v. Page, 18 Wall. 350, 21 L. Ed. 959; 34 C.J. 1140. Due weight, however, must be accorded proof afforded by the judgment roll itself, together with the reasonable intendments therefrom. The record in support of a judicial decree may be insufficient to show complete regularity of procedure as against a direct attack, and yet be sufficient to sustain the decree against collateral attack.

Pretermitting the effect of the attorney's appearance for Mrs. Lynch in the divorce suit, it clearly appears that a sworn petition was filed in which Lynch alleged, besides his grounds for divorce, the necessary jurisdictional facts under the Missouri statutes. Citation was duly issued and published for four consecutive weeks in the manner required by the Missouri statutes as interpreted by the decisions of the highest court of Missouri, from which we find · no occasion to depart. Kunzi v. Hickman, 243 Mo. 103, 147 S. W. 1002; Keaton v. Jorndt, 220 Mo. 117, 119 S.W. 629; Hector v. Mann, 225 Mo. 228, 124 S.W. 1109; Ray v. Ray, 330 Mo. 530, 50 S.W.(2d) 142. This case differs on the facts from Cheeley v. Clayton, 110 U.S. 701, 4 S.Ct. 328, 28 L.Ed. 298, wherein the Colorado territorial statutes were not complied with by making a continued effort to effect personal service of process, and from Galpin v. Page, 18 Wall. 350, 21 L.Ed. 959, wherein no citation was issued, publication of notice being without authority and therefore ineffective.

■ The matrimonial domicile of Lynch's first marriage was originally in Mississippi. It appears, however, that Lynch left Mississippi for the express purpose of establishing a new business location, going first to Tennessee, thence to Missouri, some time thereafter to Texas, but never returning to reside in Mississippi. Mrs. Drummond (then Lynch) left Mississippi a few months after Lynch and did not return there until about two years thereafter as the wife of J. D. Drummond. Unless guilty of desertion, the matrimonial domicile followed Lynch to Missouri, if he went there animo manendi. Lynch's sworn petition alleged that he was a resident of Missouri, and had resided there one whole year before filing his petition, and that defendant Ella Lynch was a nonresident of that state, and was wrongfully living apart from him. These matters were therefore squarely presented for the Missouri court's determination. The court found that Lynch "is an innocent and injured party," thus absolving him from guilt of desertion, a question of fact which that court was competent to decide. In specifically finding him "entitled to the relief prayed for," that court also necessarily determined upon the allegations of the pe-

tition, as a prerequisite to the exercise of its jurisdiction, that Lynch was then a resident of Missouri. As the innocent spouse, the matrimonial domicile prima facie followed him there.

After a lapse of forty years, and especially after Mrs. Drummond had affirmatively treated the decree as valid and acquiesced therein during that time, and the rights of other persons have intervened on the faith of the decree, the clearest and most satisfactory proof should be required to overthrow the Missouri court's determination of these matters, even if less convincing evidence might suffice in other circumstances. De Bouchel v. Candler (D.C.) 296 F. 482. The countervailing proof as to matrimonial domicile here presented, resting largely upon inference, is not sufficiently clear or convincing to condemn the Missouri decree, on collateral attack, as coram non judice. We hold, therefore, that the Missouri court had jurisdiction of the parties and subject-matter in the divorce suit, and that its decree is valid and entitled to full faith and credit in Texas.

Parker v. Parker (C.C.A.) 222 F. 186, differs from this case on the facts, in that the husband there was clearly guilty of desertion, so that the matrimonial domicile did not follow him to Missouri, the wife having remained in California, the state of original matrimonial domicile. Moreover, she had not affirmatively treated the divorce decree as valid by remarrying, nor by accepting any benefits thereunder; and she was not definitely shown to have known of its existence until after her husband's death. The wife was there held free from laches, but no question of estoppel was present in that case as here. Andrews v. Andrews, 188 U. S. 14, 15, 23 S. Ct. 237, 47 L.Ed. 366, also materially differs from this case on facts.

Although Mrs. Drummond (then Lynch) admittedly had actual knowledge of the decree in the fall of 1892, no effort was ever made by her to directly attack the decree for fraud, nor to have it otherwise directly reviewed. On the contrary, she knowingly and voluntarily acquiesced therein, accepted the benefits thereof, and treated the divorce as valid by marrying J. D. Drummond, March 8, 1893, with whom she lived as husband and wife for a year or more, and by whom she bore a son, not questioning the divorce decree for forty years after its rendition, nor until after Lynch's death. In these circumstances, she will not now be permitted to collaterally impeach the decree for the sole purpose of sharing in Lynch's estate. Her conduct estops her from claiming any portion of his estate, except that to which she is entitled notwithstanding the divorce, and which the District Court awarded her. We do not assert that parties may become divorced, nor the marital relation abrogated, through estoppel by conduct. The marriage relation between Ella Drummond and her former husband, Lynch, has been terminated by death. She now asserts the former relationship, and the invalidity of the Missouri decree, solely for the purpose of securing a portion of Lynch's property. For that purpose, and that alone, we hold that she is estopped by her own conduct. Bruguiere v. Bruguiere, 172 Cal. 199, 155 P. 988, Ann.Cas.1917E, 122; Arthur v. Israel, 15 Colo. 147, 25 P. 81, 10 L.R.A. 693, 22 Am.St.Rep. 381; Marvin v. Foster, 61 Minn. 154, 63 N.W. 484, 52 Am.St. Rep. 586; Mohler v. Shank's Estate, 93 Iowa, 273, 61 N.W. 981, 34 L.R.A. 161, 57 Am.St.Rep. 274; Hennessey v. Hudson, 100 Fla. 967, 131 So. 315; Ponce de Leon Co. v. Day, 90 Fla. 197, 105 So. 814, 815; Wright Lumber Co. v. McCord, 145 Wis. 93, 128 N.W. 873, 34 L.R.A.(N.S.) 762, Ann.Cas. 1912B, 92; Notes, 28 A.L.R. 1126; L.R.A.1917B, 503; 19 C.J. 176. Cf. Eldridge v. Eldridge (Tex.Civ.App.) 259 S.W. 209; De Beque v. Ligon (Tex.Civ. App.) 286 S.W. 749; Id. (Tex.Com.App.) 292 S.W. 157; Moor v. Moor (Tex.Civ. App.) 63 S.W. 347; 19 C.J.. 176, 378. Cf. contra, In re Christiansen, 17 Utah, 412, 53 P. 1003, 41 L.R.A. 504, 70 Am.St.Rep. 794, but see, also, Amy v. Amy, 12 Utah, 278, 42 P. 1121, affirmed Young v. Amy, 171 U.S. 179, 18 S.Ct. 802, 43 L.Ed. 127.

Lynch left a will dated May 5, 1903, in which, after referring to the Missouri divorce and the settlement thereby of property rights incidental to his first marriage, he bequeathed to Lucille Lynch Bullard, his daughter by that marriage, the sum of $5. He devised his home place to his second wife, Nannie Keffer Lynch, and provided that the remainder of his real property should "be and remain undisposed of until the youngest of my children by my wife, Nannie G. Lynch, nee Keffer, shall reach the age of 21 years, and that it then be equally divided between my wife, Nannie G. Lynch, nee Keffer, and my

children by her, if she, my said wife, be then living and unmarried." But if his said wife remarried or predeceased him, then said real estate, other than the home place, " * * * be equally divided between my said children by my wife, Nannie G. Lynch, when the younger shall reach the age of 21 years." His personal property was bequeathed in substantially the same manner. Nannie Keffer Lynch predeceased her husband, before their youngest child became twenty-one years of age. The will not having been changed, Lynch died intestate as to the home place. The three children of this marriage all survived their mother, who died in 1909; but one of them, Granada, predeceased her father in 1917, while the two sons, C. L. Lynch, Jr., and Earl Lynch, survived their father. Plaintiffs contend that this language created individual gifts and that since Granada predeceased her father, the devise to her lapsed, and that Lynch, Sr., therefore died intestate as to the share of his estate Granada would have received had she survived him, thus entitling Lucille Bullard as an heir at law to one-third of this one-third interest. Cf. Bittner v. Bittner (Tex.Com.App.) 45 S.W.(2d) 148, and Leatherwood v. Stephens (Tex.Com. App.) 24 S.W.(2d) 819.

 Whether a testamentary gift is left to such a class that the survivors would inherit the whole gift when some of the class predeceased the testator, or whether it is left to named persons as individual estates which will lapse upon the decease of the named beneficiary, depends upon the testator's intention. Note, 75 A.L.R. 773; Davis v. Sanders, 123 Ga. 177, 51 S.E. 298. Interpreting the language used by this testator in the light of the circumstances, both when the will was made and at his death, we are convinced that his intention was to pass the devised estate, not to named individuals whose death would defeat the gift, but to a class consisting of Lynch's then wife, Nannie, and his children by her. The beneficiaries, except the wife, were not designated by name. They were referred to as a class, the members of which were determinable at a future and indefinite date. If another child of this marriage had been born subsequent to the execution of the will, there is no doubt that such child would have shared under the will as a member of the class. Although both the wife Nannie, and the daughter Granada, predeceased the testator, their portions did not lapse so as to be distributed as intestate or residuary estate, but passed to the surviving members of the class, C. L. Lynch, Jr., and Earl Lynch, children of Nannie and C. L. Lynch, Sr., both of whom survived their father.

That Lynch intended Lucille, his daughter by his first marriage, to have only $5 of his testamentary estate, is clearly evidenced by the following language in his will: "Whereas there was born to my first marriage, referred to in paragraph No. 5 hereof, one child, to-wit: Lucile Lynch, and because all property questions were settled in the decree of divorce alluded to in said paragraph, in order that no question may arise respecting the rights or claims of said Lucille Lynch, I give and bequeath to the said Lucile Lynch the sum of Five Dollars, to be paid out of my personal estate. * * *"

The decree appealed from is affirmed.