McDERMOTT et al., Appellants, v. BERTRICE GRAY, alias BERTIE McDERMOTT.

**Division Two, July 3, 190€.**

1. **SUIT TO SET ASIDE DEED: To Annul Divorce Decree.** A suit to set aside certain deeds cannot also be considered a suit to annul and set aside a decree divorcing the defendant from a former husband.

2. ———: ———: **Void.** A decree was entered divorcing defendant from her husband. Afterwards she married the brother of plaintiff, and that brother died without children, and she elected to take one-half his estate under the statute, and she then instituted partition proceedings, for a division between her and her husband's mother, brother and sister of the estate left by her last husband, and during the pendency of that suit, plaintiff having bought out the interests of her mother and brother, a settlement was effected by which they agreed upon a division of the property between them, and exchanged deeds conveying to the other the interest of the grantor in the lands mentioned therein. Afterwards this suit was brought to set aside those deeds, on the ground that the service of process in the divorce suit, which was by publication, was insufficient, and that, therefore, defendant had never been divorced from her first husband, and her marriage to plaintiff's brother was illegal and void. *Held*, that, unless the decree in the divorce suit was absolutely null and void, plaintiff cannot recover in this suit.

3. ———: ———: **Irregularities.** Mere irregularities in a suit for divorce will not make void a decree therein.

4. ———: ———: **Who May Maintain Suit.** Third parties or strangers to the record in a divorce suit, for example, the brother, mother or sister of the husband therein, cannot bring a suit to set the divorce decree aside. If that decree was absolutely void, they may dispute it in a proceeding in which its validity is involved. But any irregularities which would have authorized the other party to the divorce decree to maintain a suit to set that decree aside, will not authorize them to maintain such a suit.

5. **DIVORCE: Publication: Signature of Clerk.** The failure of the clerk to sign and attest the order of publication in a divorce suit is an irregularity; and if the record discloses that the clerk, upon the filing of the petition, spread the order of publication upon the record and certified this order as a true copy, the divorce decree based thereon will not in a collateral proceeding be set aside or held for naught.

6. ———: ———: **Collateral Attack.** If the order of publication was directed to the proper party in his proper name and the proof of such publication was submitted to the court, and the court found that the defendant had been duly and legally brought into court by such publication, a judgment rendered upon such publication cannot, in a collateral proceeding, be attacked for irregularities of the clerk in making the order.

7. ———: ———: ———: **Strict Construction of Statute.** Strictness in the rules of law applicable to assailing judgments in collateral proceedings should not be lessened in applying them to decrees of divorce; for such decrees often affect important rights of innocent persons.

8. ———: ———: **Naming Wrong Paper in Decree.** The fact that the divorce decree recited that the order of publication had been printed in the Gazette-Herald, whereas in fact it was printed and was directed to be printed in the Review, in no manner affects the validity of the decree. That recital was mere surplusage. Besides, it was manifestly a clerical error.

9. ———: ———: **Directed to Defendant by Initials.** The petition named Alonzo H. Gray as defendant, and the order of publication was directed to A. H. Gray. He had formerly lived with his wife in the county where the publication was made and the suit was brought, and was usually known as Lon Gray. Their marriage license named him as A. H. Gray, and he was married as A. H. Gray, and he had cashed checks and transacted other business as A. H. Gray. *Held*, that the order of publication directed to A. H. Gray was amply sufficient to give the court jurisdiction over the divorce proceeding, and the divorce decree entered in her favor in pursuance thereof cannot be declared to be void in a collateral proceeding.

10. ———: ———: **General Rule as to Name.** The general rule applicable to divorce proceedings, which are in their nature actions *in rem*, is that the given and surname of both plaintiff and defendant should be set forth in the pleadings and process with accuracy; and where the service is by publication a substantial and even a rigid compliance with this rule is required. But there are well-established exceptions to this rule. One is, that where a man secures a marriage license which describes him by his initials and he is married by the same initials, a publication directed to him by the same initials in a suit for divorce by his wife is sufficient.

Appeal from Clark Circuit Court.—*Hon. E. R. McKee,* Judge.

Affirmed.

*Berkheimer & Dawson* for appellants.

The court had no jurisdiction to grant the divorce in favor of the defendant against her husband Alonzo H. Gray, and had no jurisdiction to inquire of its jurisdiction in such case, for the reasons: 1st. The order of publication made by the clerk was not signed or attested by him. This is a judicial act and must be attested by the clerk. Wade on Notice, sec. 1062; Hays v. Lewis, 21 Wis. 667; Charles v. Kelley, 120 Mo. 141; 20 Ency. Pl. and Pr., 1138; Paton v. Hill Co., 33 S. W. 383; Steele v. Murray, 80 Iowa 336. 2nd. For the reason that the petition filed in the divorce case by defendant asking and praying for a divorce from her husband Alonzo H. Gray is entitled ''Bertrice Gray against Alonzo H. Gray'' and herein charges: 1st. That she was married to said Alonzo H. Gray; that Alonzo H. Gray was guilty of the grievances therein mentioned. 2nd. That she as the wife of said Alonzo H. Gray conducted herself in a dutiful manner. 3rd. That she be divorced from Alonzo H. Gray and take her maiden name of Holiday. 3rd. The order of publication was entitled ''Bertrice Gray against Alonzo H. Gray,'' ordered the publication of a notice to Alonzo H. Gray notifying the

said Alonzo H. Gray of the commencement and pendency of said suit, the general nature of the same to be to obtain a divorce from said Alonzo H. Gray, and notifying said Alonzo H. Gray to appear to the said suit of Bertrice Gray against Alonzo H. Gray, etc. 4th. The decree of divorce in favor of defendant against Alonzo H. Gray (relied on in this suit) is founded on the said petition in said cause entitled ''Bertrice Gray v. Alonzo H. Gray.'' The order of publication aforesaid entitled ''Bertrice Gray against Alonzo H. Gray'' is entitled ''Bertrice Gray against A. H. Gray'' divorcing Bertrice Gray from A. H. Gray, not Alonzo H. Gray, as stated in the petition and order of publication, and attempts to annul the marriage between Bertrice Gray and A. H. Gray (not Alonzo H. Gray) as in the petition and order of publication. The notice of publication must correspond with the order made by the clerk and must be in harmony as to names. Wade on Notice, sec. 1060; Pomeroy v. Betts, 31 Mo. 419. A. H. Gray does not identify Alonzo H. Gray. Identity of initials does not identify names. Liddon v. Hurdnot, 22 Fla. 442. Initials are not a name. Steidman v. Stremple, 29 Mo. App. 484; Web. Unabridged Dic., Title ''Initials.'' 5th. Service by publication depends upon a strict conformity with the statute authorizing the same; being in derogation of the common law, it is always strictly construed; it must be shown that its provisions have been strictly complied with (this provision runs through all the cases cited.) Wade on Notice (2 Ed.), sec. 1030; Burge v. Burge, 94 Mo. App. 15; Troyer v. Wood, 96 Mo. 491; Skelton v. Sackett, 91 Mo. 357. The Christian and surname of both the plaintiff and defendant should be set forth with accuracy. Turner v. Gregory, 151 Mo. 103; Corrigan v. Schmidt, 126 Mo. 304; Elting v. Gould, 96 Mo. 535; Riffle v. Ozark Lumber Co., 93 Mo. 41; Burge v. Burge, 94 Mo. App. 15; Troyer v. Wood, 96 Mo. App. 481; Choen v.

State, 21 Am. St. Rep. 179; Enwold v. Oleson, 39 Neb. 59. The decree in the divorce case of Bertrice Gray against Alonzo H. Gray (shown on the record of the said court as a decree against A. H. Gray) is null and void and the same did not annul the marriage relation existing then between the defendant and said Gray for the reason the defendant in that suit was not notified of the beginning, pendency and the general nature thereof to defend the same. 6th. The notice as published in the newspaper, the "Review," notified A. H. Gray. Vincent v. Means, 184 Mo. 327; Spore v. Land Co., 186 Mo. 656. The fact that the statute has been strictly complied with must be shown, no presumption of jurisdiction being indulged in. Galpin v. Page, 18 Wall. 364; Cofielf v. McCleland, 16 Wall. 331; Rickerson v. Richardson, 26 Cal. 300; Commonwealth v. Blood, 97 Mass. 538; Kelly v. Murdagh, 184 Mo. 377. A notice not according to law is no notice. State v. Huff, 161 Mo. 459. Knowledge is not substituted for notice. Green v. Myers, 98 Mo. App. 438; Tourville v. Railroad, 61 Mo. App. 325; Wilson v. Railroad, 108 Mo. 596; Harness v. Cravens, 126 Mo. 252; Young v. Downey, 150 Mo. 326; Parker v. Burton, 72 S. W. 663; Feurt v. Castor, 174 Mo. 303; Tooker v. Leake, 146 Mo. 430; Vincent v. Means, 184 Mo. 327. The fact that the notice has come to the knowledge of the defendant cannot be shown to supply a deviation in the publication. Wade on Notice (2 Ed.), sec. 1030; Scorpion Sewing Machine Co. v. Marseno, 10 Nev. 370; Likens v. McCormack, 39 Wis. 370. The decree of divorce as it appears on the record recites that the notice of publication was published in the Gazette-Herald, which is not the fact. There was no publication in the Gazette-Herald, which may be shown by other parts and recitals in the record. Thomily v. Prentice, 96 N. W. 728; Harness v. Cravens, 126 Mo. 233.

*Charles Hiller, Smoot & Smoot* and *Whiteside & Yant* with *W. T. Rutherford* for respondent.

(1) The contention of appellant that order of publication was not signed and attested by the clerk is not maintained by the facts in the case. The whole order was spread upon the record proper and the order returned with the publication as both signed and attested by the clerk. The fact that the record was not signed at the end of the order when it appeared upon the record proper would not invalidate the order of publication when the order made and returned was properly certified. Fontaine v. Hudson, 93 Mo. 62; Platte County v. Marshall, 10 Mo. 246; Charley v. Kelley, 120 Mo. 134. This is a collateral attack on judgment, and every presumption that the law gives in favor of the proceedings is indulged in this cause. Charley v. Kelley, 120 Mo. 141. Though the order may be defective, and the mode of publication may not conform to the statute, still it is good against collateral attack. Kane v. McCowan, 55 Mo. 191; Johnson v. Gage, 57 Mo. 160; Freeman v. Thompson, 53 Mo. 183. The judgment in this case recites due and regular publication, and is not subject to collateral attack. Appellants cannot assail the judgment, being strangers to the record. Black on Judgment (1 Ed.), sec. 317; Drexel's Appeal, 6 Pa. St. 272. A judgment for divorce must be stable and cannot be assailed, for the strongest reasons. Black on Judgments, sec. 320; Parrish v. Parrish, 9 Oh. St. 534. It cannot be reviewed under the statute after a lapse of time. R. S. 1899, sec. 2932. (2) An action for divorce is a proceeding *in rem,* the marriage relation being the *res.* Ellison v. Martin, 53 Mo. 575; Burge v. Burge, 94 Mo. App. 15; Mosely v. Reily, 126 Mo. 124; Elting v. Gould, 96 Mo. 541. A notice which described the defendant as he described himself in a deed which he has put upon record, even though initials be used in the place of the Christian name, is sufficient. Turner v.

Gregory, 151 Mo. 100. (3) All the matters pertaining to said divorce being matters of record, whether the divorce was legal or not, the adjustment of the partition suit, the deeds made by the parties must stand, for the most that could be said of it was that they had made a mistake of law. If a party, with a full knowledge of all the facts, pays money in settlement or otherwise, same cannot be recovered back. 1 Parsons on Contracts (5 Ed.), p. 462; 5 Cush. 115; 39 Mo. App. 268; Scotland Co. v. Ewing, 116 Mo. 137. A settlement can only be abandoned for fraud, error or mistake of fact. Money voluntarily paid under a mistake of law cannot be recovered back. Nelson v. State, 16 Ind. 31; Supervisors v. Briggs, 2 Denio 26. If by reasonable diligence a party could ascertain the facts equity will not furnish a remedy. Story's Equity (10 Ed.), sec. 146. Equity will not relieve against a mistake where the party complaining had within his reach the means of ascertaining the true state of facts, unless he was deceived by the other party. Brown v. Fagan, 71 Mo. 568.

FOX, J.—This cause is brought to this court by appeal on the part of the plaintiff from a judgment and decree dismissing the bill of plaintiffs, which sought to set aside certain deeds executed by appellant Lucy Turner, conveying certain lands to the respondent, for possession of the same and for rents and profits.

To fully appreciate the nature and character of this cause of action it is well to indicate the substance of the issues as indicated by the pleadings.

The amended petition upon which the case was tried alleges that one Robert L. McDermott died at the county of Clark intestate during the month of September, 1901, leaving as his heirs at law the plaintiffs, his sister, mother and brother.

2nd. That said McDermott at his death was the owner of ten thousand dollars worth of personal property.

3rd. That he at the time was the owner of the following real estate in said county, to-wit: The southwest quarter of section 29, and the northwest quarter of section 32, all in township 65, range 7.

4th. That before the death of said McDermott, by a pretended marriage to the defendant, under the name and style of Bertie Holliday, he married the defendant, and that said pretended marriage, occurred on the —————— day of October, 1896.

5th. That defendant by virtue of said marriage claimed to be the widow of the decedent McDermott, and having elected under the statute to take as an heir was entitled to one-half of all his estate.

6th. That after the death of said McDermott, plaintiff Louisa A. McDermott (mother of decedent) conveyed all her right, title and claim in and to an undivided one-sixth of said lands to plaintiff Lucy Turner (sister of decedent), and that plaintiff James W. McDermott (brother of decedent) conveyed to said Lucy Turner all of his undivided one-sixth of said lands by deeds duly recorded.

7th. That thereafter for the purpose of partitioning said lands and for no other purpose whatever, plaintiff Lucy Turner conveyed by deed to defendant all her right, title and interest in the southwest quarter of section 29 in said township and range, and that thereupon in consideration of such conveyance and for the purpose of partitioning said lands defendant conveyed by deed to said Lucy Turner the northwest quarter of section 32, said township and range, and that in order to equalize the value of the lands so divided said defendant paid Lucy Turner the sum of $1,700.

8th. That said defendant never was the wife of said McDermott, deceased, and was not after his death his widow, and was not entitled to any part of said estate of said McDermott, but on the contrary was at the time of the said pretended marriage with said de-

cedent the wife of one Alonzo H. Gray, who was at the time of the said marriage living and for a long time thereafter.

9th.   That the defendant commenced a suit for a divorce from the said Alonzo H. Gray returnable to the April term, 1896, of the circuit court of Clark county, Missouri, and that at said term of said court such proceedings were had therein that the defendant obtained a decree of divorce from her said husband Alonzo H. Gray, and that within six months thereafter the pretended marriage between her and said McDermott was consummated as aforesaid.

10th.   That said decree of divorce so rendered in favor of defendant was and is null and void and did not divorce the defendant or annul the bonds of marriage between her and said Gray.

The petition further states that at the time of the death of the said Robert L. McDermott and at the time of the making of the deeds in partition and long thereafter both the plaintiff and defendant were mutually mistaken with reference to the effect of the divorce decree, and both in good faith mutually believed that the decree of divorce was valid and did divorce the parties, and so believing were mutually mistaken both as to the law and the fact that the defendant was the widow of decedent McDermott by virtue of the said pretended marriage and his heir, and that she was entitled to the undivided one-half of all of his property, she as aforesaid having elected to take under the statute, and that this plaintiff, Lucy Turner, in good faith, believing the divorce decree valid and that defendant was the wife and widow of said deceased McDermott made the partition deed as aforesaid to the defendant and had she not been deceived by the mutual mistake of both the defendant and herself she would not have made the same, and that there is and was no consideration for the deed from herself to said defendant for the reasons aforesaid, and that on account of the mutual mistake of both

parties, plaintiff Lucy Turner and defendant, they both believed that they were tenants in common of the lands herein described.

Said petition further charges that on account of the invalidity of said divorce decree and circumstances following as herein stated they were not tenants in common, and that the defendant had no right, title or claim to any of the property of said McDermott, deceased. That they did not discover such mistake until immediately before the commencement of this suit. That said Lucy Turner here brings into court the said sum of $1,700, for the use of said defendant and asks judgment and a decree that the title in and to the lands so conveyed to the defendant be cancelled and for naught held and esteemed and the same be vested in the plaintiffs according to their respective rights and that they have judgment for possession of the lands and for rents and profits.

The answer to this petition was substantially, first, a general denial. Second, admits that the said McDermott died intestate in Clark county in the month of September, 1901; admits that he was the owner of the lands described in the petition. Third, states the marriage of the defendant at the county of Reno, Kansas, with A. H. Gray, and that she afterwards filed her petition for a divorce in the clerk's office of the circuit court of Clark county, Missouri. That A. H. Gray being a non-resident of the State of Missouri, an order of publication was made by the clerk of said court and published in the Review, a weekly newspaper, in Clark county, Missouri. That the clerk in providing and furnishing the publisher of said newspaper with a copy of said order of publication styled said defendant as A. H. Gray and that A. H. Gray was the name by which the defendant was usually known and by which he styled himself in business and by which name he was married. That this was a due and legal notice to the said A. H. Gray of the com-

mencement and pendency of said divorce proceedings and that a decree of divorce was granted upon such notice and that the same divorced the defendant from said Gray. That the defendant was lawfully married to the said McDermott, deceased, in the county of Shelby, on the 5th day of October, 1896; and that she lived with him as his wife until his death. Admits the deeds from Louisa McDermott and James W. McDermott to the plaintiff Lucy Turner of the lands described as stated in the petition. That the said McDermott left as his heirs the parties stated in the petition, and the defendant as his wife, and that she took under the statute as herein provided. That on the —— day of ——— 1902, the defendant filed in the circuit court of said county a petition praying for a partition of said lands according to the respective rights of the parties and that the plaintiff Lucy Turner and Louisa McDermott filed answer therein admitting the respective rights of the parties in the lands as set forth in the petition and that Lucy Turner was the owner of the share of her co-plaintiff Louisa McDermott in the undivided one-half of said lands but that the same was not susceptible of division in kind and asking that the same be sold and partition be made of the proceeds thereof. That at the time of the delivery of the deeds as aforesaid by the said Lucy Turner to the defendant and the payment of said $1,700 and the delivery of the deed by the defendant to said Lucy Turner it was a settlement of the matters between them relating to said lands, and that at the time all parties had full knowledge of all the facts and circumstances surrounding the same and these facts are pleaded as a defense to the action.

The plaintiffs filed a replication denying all of the affirmative matter in the answer.

The testimony elicited at the trial of this cause tended to show substantially the following state of

facts: That on the 12th day of July, 1888, A. H. Gray was married to Bertie Holliday in Reno county, Kansas, by a minister. Before his marriage he went to the probate judge of Reno county and filed his application for a license to be married to said Bertie Holliday, in said application styling himself and giving his name as A. H. Gray. He asks in said application that a marriage license be issued to him in the name of A. H. Gray. The marriage license is issued to him in that name by S. A. Outwood. He was married in the name of A. H. Gray. That afterwards he and his wife, the present respondent, moved to Clark county, Missouri, and while he resided in said county there is some testimony tending to show that he was known as A. H. Gray and that he did, on several occasions, in transacting business with the banks in the way of cashing checks, given to him, transact such business in the name of A. H. Gray. While living at Kahoka, Clark county, Missouri, in 1895, he separated from his wife and left, and she in January, 1896, filed her petition in the circuit court of Clark county, Missouri, for divorce. This petition was styled Bertrice Gray, plaintiff, v. Alonzo H. Gray, defendant. After alleging the causes for divorce, it alleged the non-residence of the defendant. Upon the filing of this petition the clerk spread an order of publication upon the record proper. This order of publication is styled similar to that of the petition, Bertrice Gray, plaintiff, vs. Alonzo H. Gray, defendant, and recited in the body of the order that unless Alonzo H. Gray appear at the next term thereof, giving the date, etc., and answer or plead to the petition in said cause the same would be taken as confessed. Thereupon the clerk issued notice of such order of publication to be published in the weekly newspaper in accordance with the provisions of the statute. This notice of publication was in the following form:

''NOTICE OF PUBLICATION.

''State of Missouri, County of Clark.

''In the Circuit Court of Clark County, Missouri, April Term, 1896.  No. 8805.

''Bertrice Gray, Plaintiff, vs. A. H. Gray, Defendant.

''At this day comes the plaintiff by her attorney before the undersigned clerk of the circuit court in vacation and files her petition and affidavit, stating among other things that the above-named defendant is not a resident of the State of Missouri.  Whereupon it is ordered by the clerk that said defendant be notified by publication that plaintiff has commenced a suit against him in this court, the object and general nature of which is to obtain a decree of divorce from the bonds of matrimony heretofore contracted between plaintiff and defendant, and that unless defendant A. H. Gray be and appear at this court at the next term thereof to be begun and held at the court house in the city of Kahoka, in said county, on the first Monday in April next, and on or before the third day of said term answer or plead to the petition in said cause, the same will be taken as confessed and judgment rendered accordingly.  And it is further ordered that a copy hereof be published in the Review, a newspaper published weekly in the county and State aforesaid:

''State of Missouri, County of Clark.

''I, E. P. Spangler, clerk of the circuit court of Clark county, aforesaid, hereby certify that the above is a true copy of the original order of publication in the cause herein named as the same appears in my office.

''Witness my hand as clerk and the seal of said court.  Done at office in Kahoka this 1st day of February, 1896.

''[Seal]                    E. P. SPANGLER, Clerk.''

This notice of publication against A. H. Gray was duly published in the Review, a weekly newspaper pub-

lished in Kahoka, Missouri, and due proof of the publication returned to the circuit court of Clark county, Missouri. Mrs. Gray and her husband, A. H. Gray, at the time of separation, lived at Kahoka, the place where the divorce suit was instituted and where the order and notice of publication was issued and published.

According· to the testimony of Mrs. McDermott, the defendant, A. H. Gray, knew that the name of his wife was Bertrice, and that Bertie, the name in which she was married, was simply used as an abbreviation of Bertrice. There was testimony on the part of the plaintiff tending to show that the name of the defendant in that divorce proceeding was Alonzo H. Gray and that he was commonly known as Lon Gray.

The circuit court of Clark county, the defendant A. H. Gray being brought into court upon this process, heard the divorce proceeding and granted the decree of divorce. The decree of divorce was introduced in evidence and it was styled Bertrice Gray, plaintiff, vs. A. H. Gray, defendant. This decree was in regular form except the recitation of the publication of the notice in the Gazette-Herald instead of the Review, which was manifestly a clerical mistake. Afterwards on the 15th day of October, 1896, Mrs. Gray was married to Robert McDermott and lived with him as his wife in Kahoka, Missouri, until his death in October, 1901, the other parties to this record being his brothers and sisters who also lived in Kahoka. At the April term, 1902, Mrs. McDermott (nee Gray) filed a petition for partition of the lands belonging to Robert McDermott, in which petition she alleged she was his widow and also alleged that she had filed her election to take a child's part and that also the brother of Robert McDermott had conveyed his interest to Mrs. Turner. To this petition Mrs. Turner filed an answer setting up the fact that she had acquired all the interest of her mother and brother and admitted plaintiff's claim and election. She admitted that Mrs. Robert McDermott was entitled to

one-half and herself to the other half of the lands belonging to said McDermott, and asked that the real estate be sold. This answer was filed by Messrs. T. L. and S. J. Montgomery, competent and learned attorneys of the Kahoka bar. While these partition proceedings were pending Mrs. Turner and Mrs. McDermott met, at that time Mrs. Turner owning one-half and Mrs. McDermott one-half of the land of the deceased. The matters in dispute in the partition suit were then and there settled, each making deeds to their respective half, Mrs. Turner making a deed to Mrs. McDermott to the land in dispute and Mrs. McDermott to Mrs. Turner to the other half. Mrs. McDermott paid seventeen hundred dollars in cash for difference in value.

There is other testimony embraced in the abstract of record, but it is not essential to the determination of the vital and overshadowing proposition in this cause, that is, the question of the validity of the decree of divorce granted defendant from her former husband. As applicable to that proposition the foregoing statement of the facts are sufficient to determine the legal proposition disclosed by the record.

Upon the submission of the cause the court entered a decree and judgment finding the issues for the defendant and dismissing plaintiffs' bill. A timely motion for new trial was filed and by the court overruled. From this judgment the plaintiffs in due time and proper form prosecuted their appeal to this court and the record is now before us for consideration.

OPINION.

This record discloses numerous assignments of error, but it is manifest that the most vital and important proposition presented for consideration is embraced in the contention of learned counsel for appellant that the decree of the circuit court of Clark county

granting the defendant, Mrs. Robert McDermott, a divorce from her former husband, Alonzo H. Gray, was null and void, hence she was not the widow of Robert McDermott, deceased, and is not entitled to the land in controversy. The correct solution of this proposition practically settles this controversy. If the decree granting the defendant a divorce from her former husband, A. H. Gray, is valid as between plaintiffs in this cause and the defendant, it is clear that the plaintiffs are not entitled to recover and the judgment and decree of the circuit court dismissing this bill was manifestly correct. We shall direct our attention solely to this question.

Appellants at the very inception of their statement of this case say that the purpose of this proceeding is to set aside the decree of divorce rendered in 1896 and have the same declared null and void and for the further purpose of setting aside certain deeds executed by appellant Lucy Turner, conveying certain lands to the respondent.

At the very threshold of the consideration of this proposition we are unwilling to confound this proceeding (which must be treated as purely one to set aside certain deeds) with a proceeding to set aside and annul the decree of divorce obtained by the defendant from her former husband. Unless the decree of divorce is absolutely null and void, mere irregularities in the securing of it can furnish no relief to plaintiffs in this suit. Plaintiffs in this cause could not maintain a proceeding to set aside this decree of divorce; they are strangers to it and have no interest in the subject-matter of it. In other words, though the decree of divorce may not be absolutely void, yet there may be some irregularities or a state of facts which would authorize the defendant Alonzo H. Gray, in such proceeding, to maintain an action to set it aside, and by decree annul its force and vitality; but as between these plaintiffs, who are strangers to that record, and this defendant, such decree

would be valid and binding, and no action could be maintained by them to set it aside.   Hence, the attack of plaintiffs in this proceeding can only be treated as collateral, and unless the judgment and decree is absolutely void, it can furnish no aid to plaintiffs in the recovery sought by this suit.

I.   It is insisted that the force and vitality of the order of publication in the divorce proceeding is materially affected by the failure of the clerk to sign and attest it.   The record discloses that the clerk, upon the filing of the petition, spread the order of publication upon the record proper of the court and while he did not sign it, yet the record further discloses that the order returned to the office of the clerk which was published in the weekly paper, as provided by statute, was certified by the clerk as a true copy of the order of publication made in the cause.   This in our opinion did not in any way invalidate the order of publication or in any manner affect its force or the purpose it was intended to accomplish.   But even conceding that this was an irregularity, are the plaintiffs in any position to attack this irregularity in a collateral proceeding?   We think not.   While it is true that in determining the validity of judgments rendered upon constructive notice we may look to such notice to see that it is directed to the proper party, for that goes to the jurisdiction of the court over the person; yet if the order of publication was directed to the proper party in his proper name and the proof of such publication is submitted to the court, and the court finds that the defendant has been duly and legally brought into court by such publication, a judgment rendered upon such publication cannot be attacked in a collateral proceeding for mere irregularities of the clerk in making such order.   Judge MACFARLANE, in Charley v. Kelley, 120 Mo. l. c. 142, in reviewing the authorities on this subject, states: ''It is said by Judge NAPTON in Kane v. McCown, 55 Mo. 200: 'When the

record shows a finding of the court, that there has been a legal order of publication, and a publication made in pursuance of such order, it is not apparent how this finding or determination of fact can be attacked collaterally any more than any other conclusion of the court in the course of its proceedings to final judgment.' [Brawley v. Ranney, 67 Mo. 283.]     The court found that an order, previously made, was duly published. This finding is not assailable in this suit.'' To the same effect is Freeman v. Thompson, 53 Mo. 183; Johnson v. Gage, 57 Mo. 160.

While there may be objections urged against the liberality of our divorce laws, in furnishing an easy method of dissolving the marriage relation; yet as long as the law exists and courts pronounce judgments in obedience to it, dissolving such marriage relation, the tendency of the American courts is to regard such judgments as possessing elements of strength and stability which frequently do not attend other decrees and judgments. This is but a proper recognition of the principle of public policy which has repeatedly been respected by the courts for the reason that such decrees and judgments affect directly the status of married persons by dissolving the marriage relation and thereby enabling them to contract new matrimonial relations with other and innocent persons; therefore, such decrees and judgments should not be dealt lightly with; to do so would endanger the peace and good order of society as well as the happiness and well-being of those who have a right to rely upon the stability of such decrees. [Parish v. Parish, 9 Ohio St. 534; Black on Judgments, sec. 320.] It follows, therefore, that the strictness in the rules of law applicable to assailing judgments in a collateral proceeding, should by no means be lessened in their application to decrees of divorce, which, as heretofore indicated, affects such important relations of the human family.

There is no merit in the suggestion of appellants that the decree of divorce as rendered by the court recites that the notice of publication was published in the Gazette-Herald instead of the Review. That the notice of publication was published as provided by law, in a weekly newspaper, there can be no dispute, and even though this decree did not name the paper in which it was published, but simply recited that it was published in a weekly newspaper in the county, it would in no way affect the force and binding effect of such decree. The name of the paper recited in the decree may be treated as surplusage and still the judgment would be valid.

This brings us to the main proposition in this controversy, that is, was the order of publication as published, directed to A. H. Gray, sufficient to bring the defendant Alonzo H. Gray into court, and was the court by reason of such process possessed of jurisdiction to hear and determine such divorce proceeding? We have carefully considered the disclosures of the record applicable to this proposition; have viewed the record from every conceivable legal standpoint, and upon the application of the well-settled rules of law, which must govern in the solution of this important question, we are unable to discover any substantial defect in such process, none at least which as between the parties to this proceeding, renders such judgment, granting defendant a decree of divorce from her former husband, Alonzo H. Gray, invalid. The defendant and her former husband, Alonzo H. Gray, resided in Clark county, the county in which this divorce proceeding was instituted. Business transactions in that county with some of the banks in the way of cashing checks given to her former husband, was done with Alonzo H. Gray in the name of A. H. Gray. The very relation sought to be dissolved by that proceeding was assumed by defendant's former husband in the name of A. H. Gray. His application for license was in the name of A. H. Gray; he was married to the defendant in this cause in the name of A. H.

Gray. The minister performing the ceremony certified that he joined and united in marriage A. H. Gray and Bertie Holliday. Upon that state of facts the law is well settled in this State that the order of publication directed to A. H. Gray was amply sufficient to give the court jurisdiction of the divorce proceeding.

An action for divorce is one at least in the nature of an action *in rem*. [Ellison v. Martin, 53 Mo. 575; Burge v. Burge, 94 Mo. App. 15.] In the case last cited the authorities are all reviewed upon the proposition as to the essential requirements of process by publication, treating of the necessity of directing the publication to the defendant by appropriate name, sufficient to bring the party into court by such process. The learned judge in that case, after reviewing the authorities, said that ''the foregoing rules are quoted mostly from decisions in tax cases to be found in our own reports, where proceedings therein were *quasi in rem*.'' This statement was followed during the course of the opinion by the announcement of the following rule applicable to suits for divorce: ''A proceeding for divorce, where the defendant is a non-resident of the State, and is notified by publication, is that *in rem* or *quasi in rem,* and no reason is seen why the rules to which we have referred as applicable in tax cases are not equally applicable in a proceeding like the present.''

The general rule as applicable to this subject is that the given and surname of both the plaintiff and the defendant should be set forth in the pleadings and process with accuracy, and where the service is by publication a substantial and even rigid observance of this rule is required. There are, however, well-understood exceptions to this general rule, and in Turner v. Gregory, 151 Mo. 100, where all the authorities are exhaustively reviewed, this exception is well defined, and the distinction clearly drawn as to the class of cases in which a variance from the general rule and the use in the publication of simply the initials of the defendant

will not invalidate the process by publication. It was said in that case, that "much controversy has arisen as to whether an order of publication which indicated the defendant merely by the initials of his Christian name was sufficient, and in Skelton v. Sackett, 91 Mo. 377, it was held that an order of publication to Q. R. Noland was not sufficient to give jurisdiction over Quinces R. Noland, in a tax case where the record title was in Quinces R. Noland. On the other hand, in Elting v. Gould, 96 Mo. 535, the order of publication to R. O. Elting was held sufficient where the record title was a patent to R. O. Elting. In Nolan v. Taylor, 131 Mo. 224, in a proceeding to collect taxes, M. Jeff Thompson appeared from the record to be the owner of the land, and the judgment was rendered against Jeff M. Thompson, and it appeared that the warrants were located and the land entered in the name of M. Jeff Thompson. It was said: 'This is the name he himself used and by which we must assume he was commonly known. He adopts and uses the given name of Jeff and enters the land in that name.' It was held that the judgment was valid. These cases proceed upon a principle. They are the construction of our statute, section 7682, Revised Statutes 1889, which requires all actions to enforce the State's lien against the delinquent owners of real estate to be brought 'against the owner of the property.' In Vance v. Corrigan, 78 Mo. 94, and in State ex rel. v. Sack, 79 Mo. 661, it was held to be a compliance with this statute to make the owner of the land of record a defendant. This ruling was followed in Cowell v. Gray, 85 Mo. 169, and many times since. When, therefore, the question of the sufficiency of the order in the Elting case was presented to the court, this court looked to the record and found that the record owner was R. O. Elting. Hence while it was true that while the owner of this land was named Richard O. Elting, he was entitled to have notice by that name, yet if of his own accord he saw fit to take the title to

his land by the name of R. O. Elting and place it of record, this was an assertion that as owner of that land his name was R. O. Elting, and when sued by that name for taxes on that land, he was estopped to say that his initials were not a sufficient designation of himself.''

In Burge v. Burge, supra, it was held and we are of the opinion properly so, that there was no good reason why the rules applicable to proper names in the case of Turner v. Gregory, supra, should not be applied to proceedings for divorce, and in discussing one of the propositions in that case, it was said: ''While it is not to be doubted that the description of the decedent in the order of publication by his initials instead of by his full Christian name of 'Oscar,' without more, would not be sufficient to authorize a judgment, yet, in view of the fact that he gave the minister solemnizing his marriage with the defendant as his Christian name that of 'O. G.' instead of 'Oscar F.,' and on other occasions described himself by the name of 'O. G. Burge,' it may be that within the meaning of the rule declared in some of the adjudged cases the description in the order as to him was sufficient.''

Following the cases heretofore cited, we have then as to this class of cases a reasonable rule for our guidance in the determination of the sufficiency of process by publication respecting the name of the defendant to whom such process is directed. We have in the case at bar the undisputed fact that the defendant Alonzo H. Gray in this divorce proceeding, when seeking to contract the marriage relation with defendant, which was sought by that proceeding to be dissolved, used the name of A. H. Gray; he was joined and united in marriage to the defendant by that name; this proceeding was brought in the town in which the defendant in this cause and her former husband, Alonzo H. Gray, resided; the notice of publication was published in a weekly newspaper in that town, where Alonzo H. Gray had, in the transaction of business, used the name of A.

H. Gray. Under this state of facts had Alonzo H. Gray undertaken to have assailed this judgment on the ground that the use of his initials A. H. was not a sufficient designation of hm, that he would have been clearly estopped, we think is too plain for discussion. The fact that the contract for the marriage relation was made in the name of A. H. Gray, that he was married by that name, makes it peculiarly appropriate in directing process to him in a proceeding which seeks to annul such marriage relation, to use the name he himself used in the consummation of such marriage contract.

We have given the disclosures of this record, in detail, our careful consideration. The parties plaintiff were all familiar with this divorce proceeding; the defendant and her former husband, Alonzo H. Gray, resided in Clark county, Missouri; he deserted his wife and she, so far as this record discloses, in good faith, proceeded to free herself from him in accordance with the provisions of law, and instituted her suit for divorce; notice of process to the defendant was published in the name used by him in the consummation of the contract; after securing a decree of divorce she married a brother of the parties plaintiff to this proceeding; lived with him as his wife until he died; in the partition proceedings instituted by this defendant after the death of her husband, at least some of the parties plaintiff fully recognized that she had legally procured a divorce from Alonzo H. Gray and was then the lawful widow of Robert McDermott. In our opinion this was a just and proper recognition of defendant's true status, and we are unwilling, upon the disclosures of this record, to say that by reason of the slight irregularities in the order of publication in the divorce proceedings, as heretofore pointed out, the marriage to Robert McDermott was invalid and therefore adulterous.

We have thus indicated our views upon this proposition, and the conclusion reached renders it unneces-

sary to discuss any of the other questions which are presented in this cause. The judgment and decree granting the defendant a divorce from A. H. Gray is a valid and subsisting judgment, and the judgment of the court in this cause dismissing plaintiffs' bill was manifestly for the right party and should be affirmed, and it is so ordered.

All concur.