RACHEL HARDING RAY, Appellant, v. MARGARET H. RAY, formerly MARGARET H. HOOPER and MARGARET H. RAY, Executrix of the Estate of Edward Mark Ray.—50 S. W. (2d) 142.

Division One, May 27, 1932.

*C. W. Meyer* for appellant.

*Joseph Morton* and *William M. Morton* for respondent.

534

FERGUSON, C.—Appellant, plaintiff below, brought this suit in the Circuit Court of Buchanan County seeking to recover a one-half interest in the personal property of the estate of Edward Mark Ray, deceased. The personal property of the estate is valued at approximately $96,000. Edward Mark Ray died "without any child or other descendants in being capable of inheriting" and appellant alleging herself to be the widow of the deceased bases her claim to one-half of said personal property upon what is now Section 325, Revised Statutes 1929. Appellant was married to Ray, December 1, 1887, and lived with him as his wife at St. Joseph, Missouri, until some time in the year 1904 when she went to Europe where she resided for several years and so far as shown never thereafter, prior to the death of Ray, returned to Missouri. Ray resided at St. Joseph, Missouri, continuously from a date prior to his marriage in 1887 to appellant until his death. On November 17, 1905, Ray filed a suit in the Circuit Court of Buchanan County, at St. Joseph, praying to be divorced from appellant on the ground of desertion, notice was given by publication, appellant made default and upon a hearing the court entered judgment on January 6, 1906, granting

Ray a divorce. On February 2, 1907, appellant was married to R. Forrest Russell in the city of New York. In the application for a marriage license appellant stated her place of residence as London, England, and that she had been divorced. Russell also stated his place of residence as London, England. It is admitted that thereafter she "lived with the said R. Forrest Russell as his wife in homes provided and maintained by the said R. Forrest Russell in the city of London, England, and in the State of New York until the year 1913, during which time said Rachel Harding Ray did hold herself out to the public generally as the wife of R. Forrest Russell who was able to and did during the whole of said period of time maintain and support the said Rachel Harding Ray in a manner appropriate to the station in life to which the said Rachel Harding Ray and the said R. Forrest Russell were accustomed." Later on September 4, 1917, in the Supreme Court of New York County, New York, appellant was granted a divorce from Russell. On December 3, 1912, being more than five years after the marriage of appellant to Russell, Ray was married at St. Joseph to Margaret H. Hooper who lived with him as his wife until his death on January 21, 1927. Ray died without issue by either marriage and left a will by which he gave all of his property to his wife Margaret H. Ray, formerly Margaret H. Hooper, the respondent herein, except a legacy of $5000 to a cousin which was paid. The will was admitted to probate by the Probate Court of Buchanan County and Margaret H. Ray was appointed executrix. Before the administration of the estate was concluded and on March 21, 1928, the appellant brought this suit making Margaret H. Ray defendant, individually and as executrix. The court found the issues for the defendant and plaintiff appealed.

Appellant contends that the judgment granting Ray a divorce was void, that she was therefore his lawful wife at the time of his death and is now his widow and under Section 325, supra, "entitled absolutely to one-half of all the personal property owned by Edward Mark Ray at the time of his death subject to the payment of all debts of said Edward Mark Ray." To sustain this contention the petition and record entries in the divorce case were offered in evidence and it is asserted that it appears therefrom that the Circuit Court of Buchanan County did not, in that proceeding, acquire and have jurisdiction of the defendant therein, the appellant here. The petition in the divorce suit was in conventional form, stated a cause of action on the ground of desertion, duly alleged that plaintiff was a resident of Buchanan County and was properly verified as required by statute but did not allege that the defendant was a non-resident of this State. The petition was filed November 17, 1905. The record of the circuit court shows that in the course of the pro-

ceedings had on that date the court made an order of publication in the case, the pertinent part of which is: "Now at this day came the plaintiff by his attorney and *it appearing to the satisfaction of the said circuit court that said defendant Rachel Ray is a nonresident of the State of Missouri and does not reside therein,* it is ordered that said nonresident be notified by publication as required by law that plaintiff has commenced his suit in this court *by petition and affidavit,* the general nature of which is," etc. (Italics ours.) Publication was made and proof thereof filed and on January 6, 1906, a hearing was had upon plaintiff's petition, the defendant making default, and the court entered a decree and judgment granting plaintiff Ray a divorce. In the judgment the court made a finding as to service had upon defendant as follows: "And it appearing to the court that *service of process has been duly made on defendant by publication."* (Italics ours.)

██ ██ "A collateral attack upon a judgment has been defined to mean any proceeding in which the integrity of a judgment is challenged, except those made in the action wherein the judgment is rendered or by appeal, and except suits brought to obtain decrees declaring judgments to be void *ab initio.* . . . A direct attack on a judgment is an attempt to amend, correct, reform, vacate, or enjoin the execution of the same in a proceeding instituted for that purpose." [15 R. C. L. pp. 838, 839.] The distinction between a collateral and a direct attack upon a judgment is made by this court, en banc, in Lieber v. Lieber, 239 Mo. 1, 143 S. W. 458, and Howey v. Howey (Mo. Sup.), 240 S. W. 450. In the Lieber case it is said: "The authorities define a collateral attack to be an attempt to impeach a judgment in a proceeding not instituted for the express purpose of annuling such judgment." This suit does not directly seek the annulment or cancellation of the divorce decree and must be taken and construed as a collateral attack thereon. However, if it affirmatively appear upon the face of the record that the court rendering a judgment did not have jurisdiction of either the subject-matter or the person of the defendant, such judgment is void and open to collateral attack. ██ "The question of jurisdiction must be tried by the whole record" (Adams v. Cowles, 95 Mo. 501, 8 S. W. 711) and "the recitals of jurisdiction or of service of process contained in the judgment must be construed in connection with the whole record, and may be overthrown by other recitals in the record of equal dignity and importing equal verity showing that the former recitals are untrue." [Kunzi v. Hickman, 243 Mo. 103, 118, 147 S. W. 1002, 1006.]

Our statute confers "jurisdiction in all cases of divorce" upon the circuit court (Sec. 1351, R. S. 1929) and it follows that under the allegations of the petition the circuit court in which the divorce decree was rendered had jurisdiction of the subject-matter. But appellant asserts that the divorce judgment is void as the petition did not allege that defendant was a nonresident of this State and the record does not show the filing of an affidavit in the case stating that fact nor do the files in the case, obtainable at the time the instant case was tried, disclose such an affidavit and therefore the court was without authority to make the order of publication and the notice given by publication being unsupported and unauthorized the court did not acquire jurisdiction over the defendant. Section 739, Revised Statutes 1929; provides for notice by publication upon nonresident defendants in certain suits therein enumerated among which is divorce, "if the plaintiff or other person for him shall allege in his petition, or at the time of filing same, or at any time thereafter shall file an affidavit stating, that part or all the defendants are nonresidents of the State." Thus the fact that a defendant is a nonresident may be shown either by affidavit or by an allegation in the petition. As the petition in the divorce suit did not contain such an allegation and the order made by the court that notice be given to the defendant by publication expressly states, "it appearing to the satisfaction of the said circuit court that said defendant Rachel Ray is a nonresident of the State of Missouri and does not reside therein," indulging the presumption that whatever was necessary under proper legal procedure to be shown as the basis for such finding by the court was shown in the manner required by statute, the showing of nonresidence must have been made by the only other mode possible, that is by affidavit. Further the same order directs that defendant "be notified by publication as required by law that plaintiff has commenced his suit in this court by petition and affidavit." It does not find that the affidavit referred to states or avers that defendant is a nonresident. However taking the order as a whole it leaves the inference that an affidavit of nonresidence was before the court as the basis for the order. It certainly does not show upon its face that the court made the order without an affidavit of nonresidence being filed to support same but leads to the contrary conclusion. We think there is nothing on the face of the record which can be held to expressly contradict the general finding and recital of due service on defendant by publication as made in the final decree and judgment so as to make the judgment void and subject to this collateral attack. [Adams v. Cowles, supra.]

Our circuit courts are courts of general jurisdiction and the prevailing rule is that in a collateral attack upon a domestic judgment

of a court of general jurisdiction every reasonable presumption is indulged to support the judgment. The general rules as to presumptions accorded judgments rendered by courts of general jurisdiction, and which are so uniformly recognized and followed by the courts of this State that we do not undertake to list here the numerous decisions, are stated in a concise manner by Corpus Juris and Ruling Case Law as follows: "It will be presumed in such a case (of collateral attack upon a domestic judgment of a court of general jurisdiction) that the court had jurisdiction both of the subject-matter and of the person, and that all the facts necessary to give the court jurisdiction to render the particular judgment were duly found, except where the contrary affirmatively appears. These presumptions are indulged where the record, although failing to show jurisdiction affirmatively, yet does not distinctly show a want of jurisdiction, as where the record of a judgment of a court of general jurisdiction is silent as to the facts conferring jurisdiction." [34 C. J. pp. 538-540.] "It is well established as a general rule that, where a court of general jurisdiction has exercised its powers, it will be presumed, unless the contrary appears of record, that it had jurisdiction both of the subject-matter of the action and of the parties, for, as the first duty of all courts is to keep strictly within the limits of their jurisdiction, any affirmative act on the part of a court implies that it has ascertained that it has jurisdiction so to act. ■ Conversely, no presumption against jurisdiction can be indulged, . . . It accordingly will be presumed that all the facts necessary to give the court jurisdiction to render the particular judgment were duly found, and that every step necessary to give jurisdiction has been taken." [15 C. J. 827-829.] "The presumption in favor of the jurisdiction of a court of general jurisdiction is conclusive and its judgment cannot be collaterally attacked where no want of jurisdiction is apparent of record. Whenever the record of such a court is merely silent upon any particular matter, it will be presumed, notwithstanding such silence, that whatever ought to have been done was not only done but that it was rightly done. So where the judgment contains recitals as to the jurisdictional facts these are deemed to import absolute verity unless contradicted by other portions of the record. Consequently such a judgment cannot be collaterally attacked in courts of the same State by showing facts *aliunde* the record, although such facts might be sufficient to impeach the judgment in a direct proceeding against it. The validity of a judgment when collaterally attacked must be tried by an inspection of the judgment roll alone, and no other or further evidence on the subject is admissible, not even evidence that no notice had been given." [15 R. C. L. p. 893.] In

McClanahan v. West, 100 Mo. 309, 320, 13 S. W. 674, 675, Judge SHERWOOD speaking for this court said: "A domestic judgment, rendered by a court of general jurisdiction, cannot be impeached by the parties to it merely because the record is silent as to the acquisition of jurisdiction. Such judgment is equally as conclusive on the parties thereto, whether it recites, or whether it fails to recite, that jurisdiction has been acquired. Nothing shall be intended to be out of the jurisdiction of the superior court, but that which specially appears to be so." [Citing authorities and a number of decisions of this court.] In State ex rel. Brown v. Broaddus, 216 Mo. 336, 346, 115 S. W. 1018, 1021, Judge VALLIANT discussing the presumption of regularity supporting the acts of a court of general jurisdiction refers to Adams v. Cowles, 95 Mo. 501, 8 S. W. 711, and says in that case, "A judgment in another case was in question wherein the order of publication stated that it was stated in the petition that the defendants were nonresidents, but on examination of the petition it was found that there was no such statement in it, and there was no affidavit of nonresidence in the record that came to this court. Yet in the judgment of the circuit court it was recited that the defendant had been duly notified by publication, and this court said that we would presume that there was an affidavit in the record in the circuit court in spite of the fact that the order of publication made by the clerk did not purport to be founded on an affidavit, but on an alleged statement in the petition which the petition itself contradicted. There was also oral evidence in that case tending to show that a search had been made among the papers for such an affidavit but none was found; that search was made some ten years after the judgment in question was rendered. In the opinion in that case per BLACK, J., the court quoted with approval from Freeman on Judgments: 'Hence, though the existence of any jurisdictional fact may not be affirmed upon the record, it will be presumed, upon a collateral attack, that the court, if of general jurisdiction, has acted correctly, and with due authority, and its judgments will be as valid as though every fact necessary to jurisdiction affirmatively appeared. The decisions to this effect are very numerous. If a statute required a certain affidavit to be filed prior to the rendition of judgment, it will be presumed, in the absence of any statement or showing upon the subject, that such affidavit was filed.' [Freeman on Judg. sec. 124.]

"There are many other decisions in our books to the same effect, but it is unnecessary to multiply cases to support so plain a proposition. The authorities hold that even when the record is silent as to the jurisdictional facts the judgment of a court of general jurisdiction will be upheld by a presumption that the facts existed

until the contrary is made to appear by an exhibition of the whole record, and *a fortiori* that presumption will be indulged when the judgment in question recites that the jurisdictional facts did exist.''

■ Treating the judgment rendered in the divorce suit as a judgment of a court of general jurisdiction in the exercise of that general jurisdiction, its validity must be tested by an examination of the judgment roll alone and the finding by the court that the defendant was a nonresident of this State and the finding and adjudication in the final decree and judgment of service duly had on defendant by publication being uncontradicted by, and not inconsistent with, any other portions of the record, the presumptions of regularity and jurisdiction accorded such judgments make it invulnerable to collateral attack and conclusive upon appellant in this suit. Even if appellant's contention that the record does not affirmatively show the filing of an affidavit stating that defendant was a nonresident and that the record is silent thereon be allowed the presumption is that such affidavit was filed and as the court expressly found that defendant was a nonresident and that defendant had been duly served by publication such finding and adjudication of jurisdictional facts is final and conclusive against collateral attack and unassailable in this suit.

■ But appellant undertakes to classify a divorce proceeding with that class of cases wherein the court, although it is one of general jurisdiction, exercises a special statutory power in a special statutory manner and otherwise than according to the usual course of common law and chancery proceedings and practice in such court. In such cases no presumptions favorable to the validity of the proceedings and judgment are indulged and jurisdiction of the court must affirmatively appear on the face of the record. Such rule is applied in this State, for the most part, in proceedings to enforce certain tax liens or for the exercise of the power of eminent domain and certain other proceedings where special powers wholly derived from statute are exercised in a summary manner. [State ex rel. Dew v. Trimble, 306 Mo. 657, 269 S. W. 617.] Having made such classification appellant then argues that the judgment in the divorce case must be held void in this proceeding because the record does not sufficiently and affirmatively show the filing of an affidavit alleging that the defendant was a nonresident of the State to support and authorize the order of publication made and that no presumption as to the validity of the court's orders and its jurisdiction can be allowed. We think that in a divorce proceeeding the circuit court must be considered as exercising its general jurisdiction substantially following the usual and ordinary practice and procedure common to civil actions, in the nature of equity suits, which are triable by the

court without a jury and in which the court resolves both the law and the facts. The court cannot be said in a divorce suit to exercise merely statutory powers in a special statutory manner. The statue relating to divorce provides that, "all such cases shall be triable by the court and the like process and proceedings shall be had in such causes as are had in other civil suits." [Section 1351, R. S. 1929.] While the grounds of divorce are statutory the circuit court in the exercise of its general jurisdiction is given cognizance over suits for divorce. [Werz v. Werz, 11 Mo. App. 26.] This court has said that public policy requires that the same intendments and presumptions be applied to a divorce decree, upon collateral attack, which are ordinarily indulged judgments of courts of general jurisdiction entered in the exercise of their general powers. In McDermott v. Gray, 198 Mo. 266, 95 S. W. 431, a collateral attack was made upon a decree of divorce granted in the Circuit Court of Clark County, Missouri. In the course of the opinion by Judge Fox it is said: "While there may be objections urged against the liberality of our divorce laws, in furnishing an easy method of dissolving the marriage relation; yet as long as the law exists and courts pronounce judgments in obedience to it, dissolving such marriage relation, the tendency of the American courts is to regard such judgments as possessing elements of strength and stability which frequently do not attend other decrees and judgments. This is but a proper recognition of the principle of public policy which has repeatedly been respected by the courts for the reason that such decrees and judgments affect directly the status of married persons by dissolving the marriage relation and thereby enabling them to contract new matrimonial relations with other and innocent persons; therefore, such decrees and judgments should not be dealt lightly with; to do so would endanger the peace and good order of society as well as the happiness and well-being of those who have a right to rely upon the stability of such decrees. [Parish v. Parish, 9 Ohio St. 534; Black on Judgments, sec. 320.] It follows, therefore, that the strictness in the rules of law applicable to assailing judgments in a collateral proceeding, should by no means be lessened in their application to decrees of divorce, which, as heretofore indicated, affect such important relations of the human family."

We hold that the presumptions which ordinarily attend the proceedings and are accorded the judgments of a court of general jurisdiction apply to a suit for divorce and the judgment rendered therein.

Other and additional reasons are assigned by respondents as precluding the plaintiff, appellant herein, from maintaining this suit

but what we have said suffices to dispose of this case and we deem it unnecessary to prolong this opinion by a discussion thereof. The judgment of the circuit court is affirmed. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All of the judges concur.