DILK, INDIVIDUALLY AND AS ADMX. *v.* SCOTT.

5-825                                    286 S. W. 2d 9

Opinion delivered January 23, 1956.

*Edwards & Edwards*, St. Louis, Mo.; *Linwood L. Brickhouse, Paul L. Barnard,* for appellant.

*Earl J. Lane,* for appellee.

PAUL WARD, Associate Justice. This appeal challenges the validity of a divorce decree rendered in the Circuit Court, City of St. Louis, Missouri, on October 5, 1948. Appellee [then Helen Edwards] married Moe Kanner on October 9, 1948 in the State of Missouri. Soon thereafter the Kanners moved to Hot Springs, Arkansas where, on July 6, 1951, they purchased property on Lake Hamilton, in Garland County, valued at Fifteen or Twenty Thousand Dollars. This property was conveyed to them by warranty deed in which the granting clause read: ". . . do hereby grant, bargain, sell and convey unto the said Moe Kanner and Helen Kanner, husband and wife, as tenants by the entirety . . ." Moe Kanner died August 19, 1951, and Helen Kanner married Dr. Jett O. Scott of Hot Springs on September 20, 1952.

At his death Moe Kanner was survived by his daughter and only heir, Lauretta Kanner Dilk, who instituted this action as an individual and as administratrix of the estate of her father. For the purpose of this opinion we will treat her in the capacity of an individual only.

In 1929 appellee was married to one Raymond D. Edwards with whom she lived for only a few months. On or about June 30, 1948, appellee filed a petition for divorce in the Missouri court above mentioned and on October 5, 1948 she was granted a decree of divorce from the said Raymond D. Edwards.

On July 19, 1954, Lauretta Kanner Dilk instituted this action in the Chancery Court of Garland County, Arkansas to recover one-half of the property above mentioned as the sole heir of her father, Moe Kanner. It was and is the contention of appellant that appellee's divorce from Raymond D. Edwards was null and void and that, consequently, appellee was not the legal wife of

Moe Kanner when the property above mentioned was purchased by them. Alleging these facts to be true it is further alleged and contended that appellee and Moe Kanner did not own the said property as tenants by the entirety but merely as tenants in common. Appellee's contention is that her divorce from Edwards was valid, that she and Moe Kanner owned said property by the entirety, and that at his death she became the owner in fee of all of the property by right of survival.

Aside from the question of laches pleaded by appellee, which it is not necessary to consider in this opinion, it is agreed by both parties that the only question for our consideration is the validity of the decree of divorce obtained by appellee from Edwards in the Missouri court. The trial judge refused to set aside the said divorce decree and we have concluded that the decree of the trial court must be affirmed.

It is the contention of appellant that the Missouri divorce decree is null and void and should be so declared by this court for the alleged reason that the procedure in the Missouri court to obtain service on Raymond D. Edwards by publication did not meet the requirements of the Missouri statute pertaining thereto.

In her brief appellant sets out the pertinent portion of Paragraph 3 of Section 506, 160 Mo. Rev. Stats. 1949 which pertains to service by publication. This section of the Missouri Statute provides for several alternative requirements to be met in procuring service by publication but only the ones pertinent to this case will be mentioned. It requires that the plaintiff or some person for the plaintiff shall allege either in a verified petition or an affidavit that: (1) The defendant is a non-resident of the State, or; (2) The defendant has "absented [himself] from [his] usual place of abode in this State." In the latter event the defendant's address must be shown, if it is known, or, if unknown, it must be so stated. After the showing is made the statute provides that "the court or judge or clerk thereof shall issue an order of publication of notice . . ."

Appellant, conceding this action to be a collateral attack on the Missouri divorce decree, still strenuously contends that under the Missouri law at least one of the above specified requirements must be met before the trial court could obtain jurisdiction and that it was not done in this case, citing extensively from *Orrick* v. *Orrick,* Mo. App., 233 S. W. 2d 826, and *Kunzi* v. *Hickman,* 243 Mo. 103, 147 S. W. 1002. As we read the *Kunzi* case, supra, the principal holding there, as it is pertinent to appellant's contention here, is: First the court laid down the general rule of law that:

". . . the courts will presume, in a collateral proceeding, that a court of general jurisdiction properly acquired jurisdiction over the parties to the proceedings therein, nevertheless that presumption must yield and give way under the positive evidence disclosed by the record therein showing that no service whatever was had upon them. Or in other words, the recitals of jurisdiction or of service of process contained in the judgment must be construed in connection with the whole record, and may be overthrown by other recitals in the record of equal dignity and importing equal verity showing that the former recitals are untrue."

Relying upon the above pronouncement the essence of appellant's contention is that the record here shows positively that the Missouri court had no jurisdiction to render the said divorce decree. Without disagreeing with appellant as to the Missouri law in this connection, we cannot agree with appellant as to what the record shows in this case. In other words we do not agree that the evidence in the record before us shows positively that the Missouri court did not have jurisdiction. On the other hand we think the record shows just to the contrary. Let us therefore examine the record on this point.

(a) Appellee's verified petition in the divorce case contains the allegation that Raymond D. Edwards "absented himself from their usual place of abode . . . since the date of the separation" in 1929. It will be noted that this allegation is the exact language used in the statute quoted above with the exception that it does not con-

tain the words, "in this state." It appears to us that this deletion is immaterial for it is clearly stated in another part of the petition that Mrs. Edwards resided in the State of Missouri. Moreover, it is further stated in the petition that the "whereabouts of this defendant are unknown to her so that the ordinary process of law cannot be served on him in this state and she prays that an order of publication be granted . . . in compliance with the statutes . . ." (b) The minutes of proceedings in the Missouri case show that the Order of Publication was granted pursuant to the above prayer. This order is not shown in the record but it is not contended by appellant that it was not in proper form and content as required by law. (c) The same minutes show that the proof of publication was made. This proof was not introduced in the record but again there is no contention that it is not proper in all respects. (d) The record contains an affidavit of Raymond D. Edwards' "attorney and agent" stating that "the defendant [Edwards] was employed at a race track in the eastern part of the country."

Thus it appears that the Missouri court in said divorce proceeding must have felt justified in issuing the order of publication, and, after examining the petition, the affidavits, the order and proof of publication, it must have felt that it had jurisdiction to enter the decree of divorce on October 5, 1948. We think the record before us shows affirmatively that the Missouri court did have jurisdiction. Taking all the allegations in the petition and in the affidavit it conclusively appears that plaintiff was a resident of Missouri, that the defendant was not a resident of Missouri, that he had absented himself from his usual place of abode in Missouri and that his address was unknown. Not only does it so appear but we are also entitled to presume that the other papers mentioned in the divorce proceeding, but not shown in this record, may have contained information which gave the trial court jurisdiction.

In the case of *Ray* v. *Ray, et al.*, 330 Mo. 530, 50 S. W. 2d 142, the Supreme Court of Missouri said: "Our circuit courts are courts of general jurisdiction, and the

prevailing rule is that in a collateral attack upon a domestic judgment of a court of general jurisdiction every reasonable presumption is indulged to support the judgment.'' The court then quoted with approval: '' 'It accordingly will be presumed that all the facts necessary to give the court jurisdiction to render the particular judgment were duly found and that every step necessary to give jurisdiction has been taken.' '' We have carefully examined the holdings in the *Orrick* and *Kunzi* cases, supra, and do not find that they are in any way contrary to the conclusion we have reached herein. The *Orrick* case, supra, was an opinion by the Court of Appeals and was considering a direct attack upon the decree of divorce. The *Kunzi* case, supra, is readily distinguishable on the facts from the case under consideration. There the records of the first trial showed affirmatively that the trial court had no jurisdiction to render a decree, while in the case under consideration not only is jurisdiction in the trial court shown by the record but by the presumption which we are entitled to draw from records not introduced.

Other decisions of the Supreme Court of Missouri are in accord with the conclusion which we have reached. In the case of *Sanders, et al.* v. *Savage*, 234 Mo. App. 9, 129 S. W. 2d 1061, the court said: '' A judgment is not subject to collateral attack unless it affirmatively appears upon the face of the record that the court rendering judgment did not have jurisdiction of the subject matter or the person of the defendant, in which event the judgment is void.'' In *Drummond, et al.*, v. *Lynch, et al.*, 82 F. 806, the court, in dealing with a Missouri decree, after first stating that the recitals of the judgment record of a foreign judgment are not conclusive as to jurisdiction, stated: ''The inquiry, however, must be confined to jurisdictional infirmities which would render the decree void, it cannot be here refused or impeached for mere irregularities.''

In questions of this nature it is our understanding of the Missouri rule, as well as the general rule, that it is our duty to inquire whether the trial court in the first instance

had jurisdiction and not whether the publication statute was complied with, and that jurisdiction may be determined from the entire file of the first proceeding if it appears in the record, or from the presumption of jurisdiction that attaches to all judgments when collaterally attacked in the absence of material parts of the file in the first proceeding.

There are good reasons founded in public policy to support the rule that judgments of courts of record, particularly in divorce matters, should not be lightly regarded and should not be revoked for mere irregularities. In the case before us appellee certainly had every reason to believe that she had secured a valid divorce from Edwards in 1948, and relying on this belief she married Kanner and after his death married Dr. Scott. If the Edwards divorce decree is now nullified it is obvious that appellee will find herself in an embarrassing position.

We could not use words to express this concern of public policy more appropriate than those used by the Supreme Court of Missouri in *McDermott* v. *Gray*, 198 Mo. 266, 95 S. W. 431, where that court said:

"While there may be objections urged against the liberality of our divorce laws, in furnishing an easy method of dissolving the marriage relation, yet as long as the law exists and courts pronounce judgments in obedience to it dissolving such marriage relation, the tendency of the American courts is to regard such judgments as possessing elements of strength and stability which frequently do not attend other decrees and judgments. This is but a proper recognition of the principle of public policy which has repeatedly been respected by the courts for the reason that such decrees and judgments affect directly the status of the married persons by dissolving the marriage relation and thereby enabling them to contract new matrimonial relations with other and innocent persons. Therefore, such decrees and judgments should not be dealt lightly with. To do so would endanger the peace and good order of society, as well as the happiness and well being of those who have a right to rely upon the stability of such decrees."

It is therefore our opinion that the decree of the trial court refusing to set aside the divorce decree of the Missouri court is not against the weight of the testimony.

Affirmed.